ISYDORE STRAUSS & SON v. NATIONAL PARLOR FURNITURE CO.

1. SALES.  *Buyer at distance.  Executory contract.  Carrier's agency.*

Where goods of certain quality and quantity are sold to a buyer at a distance, the carrier is not the agent of the buyer to accept or reject the goods as conforming or not conforming to the executory contract of sale, but is his agent simply as to transportation.

2. SAME.  *Receipt from carrier.  Acceptance.  Rejection.  Reasonable time for.*

In such case the receipt of the goods by the buyer from the carrier is not itself an acceptance of the goods as complying with the contract, but the buyer has a reasonable time, after so receiving the goods, to examine them and to accept or reject them.

3. SAME.  *Notice of rejection.  Sale by buyer on seller's account.  Agency.*

If in such case the buyer rightfully reject the goods and notify the seller thereof and that they are held at the latter's risk, and the seller do nothing within a reasonable time after the notice, the buyer may, in good faith, sell them to the best advantage for the seller's account.    In so doing the former acts as the agent of the latter.

4. SAME.  *Sale on seller's account to be seasonably made.  Reasonable expenses.*

If the buyer in such case, having rejected the goods and notified the seller, make sale on seller's account, he must do so in a reasonable time, and he can, out of the proceeds, reimburse himself for only such expenses as were reasonably incurred on account of the seller about the sale.

5. SAME.  *Unreasonable expense account.*

    Sellers in such cases are not to have the value of their goods eaten
up by an unreasonable expense account; storage charges, insur-
ance and other expenses must be limited to those incurred by the
buyer within a period of time which he might reasonably have
waited before selling.

6. SAME.  *Return of goods or offer to return.*

    In such case it is not necessary that the buyer should actually re-
turn or offer to return the goods, especially where the distance is
great and the freight charges large.

7. SAME.  *Too many goods.  Buyer's right to refuse.*

    The buyer is entitled to refuse the whole of the goods tendered by
the seller under an executory contract of sale if they exceed the
quantity agreed on, and the seller cannot rightfully insist upon
the buyer's acceptance of all or upon his selecting out of a larger
quantity.

FROM the circuit court, first district, of Hinds county.

HON. ROBERT POWELL, Judge.

The National Parlor Furniture Co., the appellee, was the
plaintiff in the court below.  Isydore Strauss & Son, of Mont-
gomery, Ala. (defendants in the court below, and now appel-
lants), by their purchasing agent, Harry Strauss, bought of
appellee, in Chicago, certain furniture.  They had bought other
goods in and near Chicago, and the appellee, by the direction
of Harry Strauss, shipped all these goods in one car to Strauss
& Son.  On receipt of the invoice, before the arrival of the
goods, Strauss & Sons wrote appellee that some of the charges
were not in accordance with the contract of purchase, and that
one set of furniture was the individual purchase of Harry
Strauss, and was improperly charged to Strauss & Son.

The goods were received by Strauss & Son in Montgomery,
and taken to their warerooms, and a correspondence followed,
Strauss & Son insisting that the goods were not according to
contract, and complaining of excessive freight charges, and
asked that the traveling salesman of appellee come to Mont-
gomery and adjust the matter, and finally notified appellee that

the goods were subject to its order, and held at its risk, and that they would be insured for the benefit of appellee. Thus matters continued for about two years, when the Strauss Furniture Co. succeeded Strauss & Son, to whom the goods were delivered; whereupon, the Strauss Furniture Co. sold all of them for over $500, but the amount realized was less than the charges made by appellants for storage, insurance, etc.

Appellee sued Strauss & Son for the amount of the original invoice. The court gave four instructions for plaintiff: (1) To find for plaintiff, the amount, however, to be determined by the jury from the evidence. (2) If goods were delivered in good condition to carrier selected by defendants, the defendants are not entitled to any deduction from price of goods on account of damage in transit. (3) Defendants not entitled to any deduction on account of storage, insurance, labor in caring for the goods, etc. (4) Form of verdict for plaintiff.

The first and third instructions asked for defendant, and refused, are, in effect (1) to find for defendant; and (3) being a suit on contract of purchase, there being no count for money had and received, if plaintiffs failed to comply with the contract of purchase, and shipped inferior goods, and mingled goods purchased with goods not bought, under one freight charge, and defendants refused to accept, plaintiffs cannot recover of defendants anything on account of goods sold by them, or the Strauss Furniture Co. for plaintiff's account. The ninth instruction refused defendants is to the effect that if one set of the furniture was not bought or received by defendants, but was bought by Harry Strauss individually, the jury will find for defendants as to such item.

*Brame & Alexander*, for appellants.

The court will see that this was an executory contract of sale, under which the rules of law are very strict, that the seller, before he can enforce payment, must show, as a condition precedent, that he has complied with the terms of the sale. The rules

are very familiar, but we will cite a few of the authorities, by way of illustration, and we will add that the instructions for the defendants, which were refused, were written with the authorities before us. In 21 Am. & Eng. Enc. L., the rule is thus stated and sustained by reference to many authorities: "The seller is bound to tender or deliver the exact quantity called for, no more, no less. He has not the right to send the goods mixed with other goods, and to call upon the buyer to accept more than he bargained for, or to select the quantity bargained for out of a larger quantity delivered." *Cash* v. *Hinkle*, 36 Iowa, 623; *Reuter* v. *Sala*, 4 C. P. Div., 239; *Makin* v. *Rive Co.*, 40 Lt., N. S., 705. The seller is under obligation to afford to the buyer opportunity for an examination of the goods, so that he may satisfy himself that they are in accordance with the contract. 21 Am. & Eng. Enc. L., 544 and note.

In *Shrimpton* v. *Warmack*, 72 Miss., 208, this court decided that where a definite quantity of goods is ordered, and the seller fails to deliver all, he has no right of action for a lesser quantity, which the buyer refuses to accept. That was a suit for the value of certain needles which where shipped, and which the purchaser claimed were not of the character and quality purchased. Benjamin on Sales, sec. 689; *Brawley* v. *United States*, 96 U. S., 168; *Perry* v. *Iron Co.*, 16 R. I., 318; *Stephenson* v. *Bergin*, 49 Pa., 36; *Pierson* v. *Crooks*, 115 N. Y., 539; *Railroad Co.* v. *Lent*, 63 Ill., 288 (115 U. S., 363); 2 Schouler's Pers. Prop., sec. 405.

"Where the vendor is a great distance from the vendee, and the goods cannot be returned without great expense, the vendee may, if they do not correspond to the contract, after giving notice to the vendor, and waiting a reasonable time for his orders, proceed to sell the goods on account of the vendor, and if they have been paid for, he can recover the difference between the net proceeds of such sales and the original contract price, or, if they have not been paid for, he will be liable only

for such proceeds." Story on Sales, sec. 409; *Hambrick* v. *Wilkins*, 65 Miss., 18, citing *Swann* v. *West*, 41 Miss., 104. "If the goods tendered are not of the quantity or quality ordered, the buyer is not bound to send them back to the seller or to place them in neutral custody; he has only to notify the seller of the nonacceptance and that they are held henceforward at his (the seller's) risk." *Grimoldy* v. *Wells*, 10 L. R., C. P., 391; 12 Moak's Rep., 451 (expressly overruling a *dictum* to the contrary in *Couston* v. *Chapman*, 2 L. R., Scotch Div. App., 250); *Leucy* v. *Mouflet*, 5 H. & N., 233; *Heilbut* v. *Hickson*, 7 L. R., C. P., 438; 3 Moak's Rep., 328.

*Mc Willie & Thompson*, for appellee.

There was no conflict in the evidence concerning the sale and delivery, the price, and the reasonable value of the goods, aside from contract price, of a large number of the items of the account. Plaintiff's evidence and defendant's alike established that defendant's [appellant's] purchasing agent presented himself at the storehouse of appellee, in Chicago, and selected and purchased a bill of furniture, embracing many [16 out of 21] of the items sued for; the price was agreed upon (the very prices charged in the account); ordered the goods shipped by a designated carrier to appellants, at Montgomery, Ala.; that the goods were so shipped, were received at Montgomery by appellants, were there taken charge of by appellants, carried to their storehouse, opened and placed on exhibition so as to be seen by their customers, were insured against loss by fire in a sum exceeding the appellees' debt, by appellants, and were actually sold by appellants, and the appellee has not been paid one cent on the account for the goods. The conflicts in the evidence all relate to specific items of the account, not embraced in above statement of concurrence of proof, and to collateral or incidental matters.

Upon this state of the evidence the court below gave, at appellee's [plaintiff's] request, a peremptory instruction to the

jury to find some amount for plaintiff, but the amount of the verdict was left to be determined by the jury from the evidence.

There was no plea by defendants [appellants] in the nature of payment, recoupment or set-off. The contentions of the defendants were: (1) That the first item of the account, while purchased by their agent at the very time he was buying for defendants, was purchased for himself, and that the price thereof was to be $100 and not $125 as charged; (2) that three other items of furniture on the account, aggregating $88, were not ordered or purchased by defendants, though, in respect to the last two of them, on defendant's own showing, the contention was reduced to a question of the identity of numbers rather than of the goods; (3) that when the goods reached Montgomery, Ala., a part of them were damaged by having been rained upon while in transit; (4) that parts of the purchases were inferior in quality to what they were represented to be during the negotiation of purchase.

Of course these contentions, it being admitted that defendants received the goods, all of them, and exercised ownership over them, and actually had the proceeds of the sale of them in their pockets, did not and could not exempt defendants from all liability, and the instruction to the jury that plaintiffs were entitled to recover some amount was correctly given.

This was an Illinois contract, and the courts of that state hold that where a person orders a quantity of merchandise to be shipped him, if, upon its arrival, it is not of the quality ordered, he may refuse to take it; but if he does receive it, and sells it, he will be liable to the shipper. *Houston* v. *Clarke*, 62 Ill. App., 174; American Digest (1896), p. 4756; sec. 78; *Boltz* v. *Huston*, 23 Ill. App., 579. This, we think, is, or, at least, it should be, the law of all jurisdictions. Even if an offer to return had been made and refused, an exercise of ownership by defendant was a waiver of the offer. But there is no evidence in the case of an offer to return the goods; defendants simply

wrote plaintiffs that they would hold the goods subject to plaintiff's order.    An offer to return must have been to return the goods to plaintiff, at plaintiff's place of business. *Tyler* v. *City of Augusta* (Me.), 34 Atl. Rep., 406.

A consideration of the whole evidence will demonstrate that the judgment appealed from should not be reversed, even if the court below, in the hurry of a *nisi prius* trial, erred in refusing one or more of plaintiff's numerous requests for instructions, which must have impressed the judge as being in the highest degree abstract, involved and bewildering.    The verdict of the jury was, and is, so manifestly correct on the entire case as to justify an affirmance in spite of any such error, if error there be. An instruction refused did not go to the jury, and, therefore, cannot be charged with having produced the verdict.

Argued orally by *L. Brame,* for appellants, and by *R. H. Thompson,* for appellee.

WHITFIELD, J., delivered the opinion of the court.

The testimony given in behalf of the defendants (appellants here) was to the effect that they bought certain designated goods of specified quantity and quality, at specified prices; that the goods received in Montgomery were inferior in quality, being in many instances filled with tow and excelsior, when the contract called for hair; that one set of furniture was so much smaller than the set bought as to be absolutely unmerchantable; that several sets received were never bought, and that these were shipped by plaintiff, in the consignment, mixed with others that had been ordered from plaintiff and other merchants, without tags on the outside, by which separation could have been had in the car before removal to defendants' warehouse; that another set, which had been bought by Harry Strauss for his own use at $100, was improperly shipped to defendants, billed to them at $125, when the contract was that it was to be charged at $100 to Harry Strauss, and not charged to the firm of Strauss

& Son; that on receipt of invoice, and before arrival of goods, objection was made, and, afterwards, notice was promptly given plaintiffs that the goods did not comply with the contract in quantity or quality, and were by said Strauss & ·Son rejected, and were held by them subject to plaintiff's order, and at the plaintiff's risk; and that certain storage and insurance charges were thereafter reasonably incurred on account of plaintiffs in the preservation of the property till sale thereof by defendants, on account of plaintiffs, some three years thereafter, and after the institution of this suit; and that these charges exceeded the value of the goods bought. On this testimony—in utter and irreconcilable conflict with the testimony of Mr. Demiel, for plaintiffs—the defendants had the right to have the issue arising submitted to the jury, under proper instructions. And, we think, all the instructions asked by defendants, except the first and third, should have been given, substituting "accepted" for "received," in the ninth instruction.

Where goods of specified quantity and quality are sold to a buyer in a distant state, the carrier is not the agent of the buyer, to accept or reject the goods, as conforming or not to the contract, but simply as to transportation. The buyer has, under such executory contract, a reasonable time after receipt of goods from the carrier to examine them, and to accept or reject them. Receipt from the carrier is not acceptance of the goods as complying with the contract in such case. *Pierson* v. *Crooks*, 115 N. Y., 548. "And if the goods do not conform to the terms of specification as to qualities—the existence of the qualities in such case being part of the thing sold and essential to its identity, and a condition precedent to the sale, the buyer can notify the seller that he rejects them, that they are at his (the seller's) risk, and if, within a reasonable time after such notice, the seller does nothing, the buyer may sell them to the best advantage, in good faith, for the seller's account. It is not necessary that the buyer in an executory contract, depending for validity upon acceptance after examination, should actually return or offer to

return the goods, especially where the distance is great, and the freight charges large." Benjamin on Sales (6th ed.), 603; *Swann* v. *West*, 41 Miss., 104; *Stevenson* v. *Burgin*, 49 Pa. St., 46; *Leucy* v. *Monflet*, 5 Hurlstone & Norman, 233; *Heilbutt* v. *Hickson*, 7 L. R. C. P., 452; *Grimoldy* v. *Wells*, 10 L. R. C. P., 394.—Coleridge, J.

In addition to the authorities cited by the learned counsel for appellant, see, also, the very interesting case of *Columbian, etc., Co.* v. *Douglass*, 57 Am. St. Rep., 362.

"As a general rule," says Mr. Benjamin, section 689, "the buyer is entitled to refuse the whole of the goods tendered if they exceed the quantity agreed, and the vendor has no right to insist upon the buyer's acceptance of all, or upon the buyer's selecting out of a larger quantity delivered." And the cases are quite strict upon this point. The reason is, that was not the contract, and a new contract cannot thus be forced upon the buyer. *Perry* v. *Iron Co.*, 16 R. I., 319.

In making the sale referred to by the buyer, he must do so within a reasonable time after promptly rejecting the goods and notifying the seller of his rejection of them. He can only act as the agent of the seller in making this sale from the "necessity of the case." *Swann* v. *West*, 41 Miss., 104. And should wait a reasonable time to permit the seller to act for himself, and if the buyer sells, he can reimburse himself only such expenses as were reasonably incurred on account of the seller about the sale and within the time which would be reasonable to wait before selling. The reasonableness of the time that the buyer should wait, as well as of all charges, the jury must determine from all the evidence. There may be cases in which the unreasonableness of the delay in selling is so manifest as that the court could charge the jury to that effect. We think here the delay in selling was beyond any period that any circuit court would allow to stand if found to be reasonable by a jury. The jury should be instructed to allow only such storage and other expenses as were reasonable in themselves as

. charges and incurred within a period of time within which the jury believe defendants, under the circumstances of the case, might reasonably have waited before selling. But they are not to allow for the whole time for which defendants here charge. Plaintiffs are not to have the value of their goods eaten up by an unreasonable expense account. Benjamin on Sales, 776; *Hambrick* v. *Wilkins*, 65 Miss., 18. The insurance premiums should not be allowed for three years, or for one. The insurance was annual. Such part of the premium as secured insurance for the reasonable time defendants might have waited before sale is all that is chargeable to plaintiffs. Manifestly a year was too long to wait, under the attitude of the parties as disclosed by the correspondence. The first, third and fourth instructions given for plaintiffs should not have been given. The second was correct.

All these issues of fact—whether the defendants had accepted or rejected the goods or had ratified the alleged sale of these goods by their subsequent dealing with them, the reasonableness of the expense charges, what was a reasonable time to wait before selling if the defendants rightfully rejected these goods—were for the jury, under proper directions as to the law.

On the return of the case into the circuit court a count for money had and received can be added.

*Judgment reversed, verdict set aside and cause remanded.*