GEORGE T. SWANN *v.* DAVID WEST *et al.*

1. EVIDENCE: CONTRACT, RESCISSION OF.—Extracts from the letters of a party which show his refusal to rescind a contract, and notice to the opposite party that the property is held at his risk and expense, are admissible as evidence for the party writing the letters.

2. PLEADING AND PRACTICE: BILL OF EXCEPTIONS: INSTRUCTIONS TO JURY, WHEN A PART OF THE RECORD.—Instructions to the jury constitute a part of the record when marked "given or refused *by the clerk*," or they may be made part of the record by the bill of exceptions.

3. PERSONAL PROPERTY: CONDITIONAL SALES.—If personal property is sold on a credit, with a warranty of soundness, and if unsound to be returned to the seller within a few days, and the property is returned as unsound, when the contrary is the fact, and the seller refuses to receive the same, the purchaser is liable for the price agreed to be paid.

4. SAME: SALE OF.—Where personal property is sold on a credit and warranted sound, with no stipulation to return the same, and the purchaser returns the property as unsound, when the contrary is the fact, and the seller refuses to receive the same, the return of the property does not divest the title of the purchaser, or exonerate him from liability to pay.

5. SAME: SALE OF: DUTY OF SELLER, WHEN PROPERTY RETURNED CONTRARY TO CONTRACT OF SALE.—Where personal property sold is returned to the seller contrary to the contract of sale, it is his duty to notify the purchaser that the property is held as his, and at his risk, and if the purchaser omits to take charge of the same within a reasonable time after such notice, the seller has the right to dispose of the property, and credit the purchaser with the amount of the sale.

6. VERDICT: WHEN SET ASIDE BY HIGH COURT OF ERRORS AND APPEALS.— When the verdict of a jury is manifestly wrong, it will be set aside by the High Court of Errors and Appeals.

ERROR to Circuit Court of Hinds county. Hon. John Watts, judge.

*Geo. T. Swann,* for plaintiff in error, cited 5 S. & M. 373; 1 Greenleaf's Ev. sec. 199; Ry. & M. 282; 1 Esp. 342; 16 East, 193; 2 Starkie N. P. Cases, 470.

*Johnston & Johnston,* for defendants in error, cited 3 How. (Miss.) 205 ; 4 ib. 90.

HARRIS, J., delivered the opinion of the court.

Plaintiff in error commenced his action in the court below, to recover the amount of a promissory note, executed to him by the defendants.

The defendants relied for their defence on the plea of payment, and a special plea, which averred in substance that the note was given in consideration of a pair of horses, purchased by the defendant Watts from the plaintiff; and that at the time of sale and of giving the note sued on, it was agreed between defendant and plaintiff's agent, Hobson, that defendant should take the horses on trial for a few days, and in the event that they proved unsound or were not approved, he should return them to plaintiff, and receive back his note. That the plaintiff warranted said horses as sound, and that they were unsound; and within the time agreed on, he disapproved of the horses, and returned them to plaintiff, who kept them, and worked them, until he finally sold them. On these pleas there were replications and issues, and a jury and verdict for defendants, a bill of exceptions taken and allowed on a motion for a new trial, and the cause brought to this court by writ of error.

The first point we deem it material to notice is that presented by the first bill of exceptions taken in the progress of the trial, and assigned for error as the second cause.

It appears by the bill of exceptions that, after the sale and delivery of the horses to defendant Watts, in a very few days he returned them to plaintiff's house, in his absence. On plaintiff's return home he sent the horses back to defendant Watts by a servant, with a note or letter; Watts being absent, his agent returned the horses to plaintiff with the letter. Two days afterwards plaintiff again returned the horses to Watts, with another letter written on the back of the first.

The letters were as follows, in part:

Swann *v.* West et al.

JACKSON, May 18, 1858.

DAVID WATTS, Esq., *Clinton*—Dear Sir :—I return you by the bearer, Wilson, the horses which were delivered to you by Mr. Hobson for me on the 15th inst. \* \* \* \* \* \* *They are your horses, for which I hold your note.*

Yours very respectfully,

GEORGE T. SWANN.

The second letter was in part as follows :

JACKSON, May 20, 1858.

MR. WATTS, *Clinton*—Dear Sir :—With the within note I yesterday sent you *your horses*; and you, or your son for you, has made the boy bring them back. My only alternative now is to inform you, distinctly, that they are now at my house, and at your own risk and expense.

I am very respectfully,

Your obedient, &c.,

GEORGE T. SWANN.

To the extent of the above extracts, these letters were competent, and should have been permitted to go to the jury. Instead of this, the court only permitted the following unintelligible extracts to be read to the jury. From the first letter the words " they are your horses, for which I hold your note ; " and from the second the following words, even more unintelligible taken by themselves : " My only alternative now is to inform you, distinctly, that they are at my house, and at your own risk and expense."

The first extract above quoted is competent to show plaintiff's refusal to rescind the contract, or to receive the horses back. The second extract is competent to prove notice to the defendant that the horses were held by plaintiff at defendant's risk and expense.

We cannot notice the assignment of error relating to the *charges* given by the court to the jury for the defendant, for the reason that they are not made a part of the record, either by

the bill of exceptions, or by the endorsement *of the clerk*, that they were "given" or "refused." The statute makes it the duty of *the clerk* to mark all instructions as "given" or refused, and "all instructions so marked" constitute by the provisions of the statute (Rev. Code, p. 504, sec. 161) a part of the record, without a bill of exceptions.

In the case before us, "given" is written under each instruction, without anything to show that it was so "marked" by *the clerk* at the time.

The last error insisted on is the refusal of the court to grant a new trial, because the finding of the jury was contrary to the weight of evidence.

It is clear that if there was a sale and delivery of the horses by Hobson, for plaintiff, upon a warranty of soundness, to defendant Watts, with the further agreement that Watts was to take them on trial for a specified time, and if they proved unsound to return them, and receive back his note ; and Watts, after keeping the horses a few days, returned them as unsound, when the contrary was the fact.

Or, if the horses were sold without any such special agreement as that stated in defendant's second plea ; and Watts afterwards sent them back to plaintiff's house in his absence ; that this did not (in either case) divest him of his title to the horses, or exonerate him from liability on his note.

If the horses were sound upon their return to plaintiff, it was his duty to notify defendant that they were at his risk, and held as his horses ; and if defendant omitted to take charge of them, in a reasonable time after such notice, plaintiff was not bound to keep them, but had the right to sell them as defendant's agent, and to credit him by the amount of that sale, and sue him for the balance due on his note.

We think this is the true rule to be deduced from the authorities, both English and American. In the case of *Sands et al.* v. *Taylor et al.*, 5 John. R. p. 406, Spencer, J., says : "The party in possession is to be considered the agent of the other party from necessity ; and his exercise of the right to sell ought not to be viewed as a waiver of his rights on the contract. It

is a much fitter rule, than to require of the party on whom the possession of the thing is thrown, against his will, and contrary to the duty of the other party, to suffer the property to perish, as a condition on which his right to damages is to depend;" and on this point the whole court was agreed, C. J. Kent saying of the right of sale, after due notice, that it is convenient and reasonable, and for the best interest of both parties. Parsons on Contracts, p. 446; *Maclean* v. *Dunn*, 4 Bing. 722; 15 Eng. Com. Law R. p. 132; *Gerard* v. *Taggart*, 5 Serg. & R. p. 34; 2 Wheat. Selwyn, p. 1359; 1 Salk. R.; *Sangfort* v. *Tiler*, p. 112.

The only question to be considered, therefore, in this view of the case is, whether the evidence shows that the horses in question were sound.

On this point the evidence of defendant's own witnesses is so overwhelming, that it is difficult to account for the verdict of the jury upon any other hypothesis than that they totally misconceived their duty under the law and the evidence.

Five out of the six witnesses introduced by defendant to sustain this defence contradict him, and show that both before and since said sale no such unsoundness existed. Add to these the two witnesses introduced by the plaintiff, besides himself, and we have the testimony of eight witnesses against the testimony of defendant, and one witness to sustain him.

Even admitting that the contract with Hobson was as stated by defendant, which seems to be at least very doubtful—from the testimony in the cause—and admitting the temporary lameness, and even "blowing" of the horse complained of, on the two occasions testified to by witness Ball and defendant. Yet the evidence scarcely leaves a doubt as to the soundness of the horses both before and after the sale, and that defendant and his witness were both mistaken. This view is greatly strengthened by the fact that Lewis, a witness for defendant, who was riding with him in the buggy the Monday after the sale, going from Clinton to Raymond, could not or did not hear that extraordinary breathing about which defendant testifies, and which is the only time he professes to have heard it, although he had

driven him from Jackson to Clinton on the day of his purchase.

We feel, therefore, no hesitation in saying, that the verdict of the jury is "*manifestly wrong*," and "the evidence greatly preponderates against it." In such case, it is the duty of this court to set aside the verdict.

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.