## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1901.

---

*(Continued from Volume 88.)*

## LITTLE ROCK GRAIN COMPANY, Respondent, v. J. A. BRUBAKER & COMPANY, Appellants.

**Kansas City Court of Appeals, May 6, 1901.**

1. **Depositions:** OBJECTION TO READING: RULING OF COURT. A deposition does not cease to be such by reason of the fact that it is irregularly certified, and a rule of court that exceptions to its reading must be taken within two days after its filing, or be filed two days at least before the trial, applies to such deposition; and if not complied with such deposition may be read.

2. **Sales:** INFERIOR QUALITY: REDUCING DAMAGES: EVIDENCE. The purchaser is not bound to accept goods of an inferior quality, and after rejecting them he may, in the absence of specific instructions, take such steps in the disposition of the goods as may be expedient to save the vendor unnecessary loss; and the evidence is reviewed and found to show plaintiffs did nothing to prevent defendants disposing of certain hay which plaintiffs refused to accept under a contract of sale.

Vol 89 app—1

(1)

3. ———: ———: RECOVERY OF PURCHASE MONEY. Where the purchaser rejects goods because of their inferior quality, he may recover back the contract price paid in advance.

4. ———: EVIDENCE: AGREEMENT WITH THIRD PARTY: INSTRUCTION. An instruction, informing the jury that there was no evidence of an agreement between the vendor and the purchaser's vendee to take certain hay and keep an account of the bad bales, is held proper.

5. ———: ———: LETTERS OF THIRD PARTY. Where a purchaser sues to recover the purchase price of certain hay he had rejected because of its inferior quality, he may offer in evidence certain letters written by his vendee which he had promptly forwarded to his vendor, as it may serve to show the nature of the transaction between the vendor and purchaser; but letters from the purchaser's vendee to the vendor defendant, relating to a subsequent agreement between the defendant and the plaintiffs, are immaterial and inadmissible.

6. ———: ———: DEPOSITION: CONDUCT OF WITNESS. Where a plaintiff reads a deposition omitting, however, portions reflecting on the condition of a witness for defendant, it takes the question of the condition of the witness out of the case and the defendant will not be permitted to read such portion.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

AFFIRMED.

*Meservey, Pierce & German* for appellant.

(1) The court erred in permitting plaintiff to introduce the deposition of H. K. Cochran taken on the twenty-first day of April, 1897. R. S. 1899, sec. 2898; State ex rel. v. Withrow, 133 Mo. 500. (2) The court should have permitted defendant to show the arrangement which he had made with the Arkadelphia Lumber Company to take the hay in controversy after notice of its rejection by plaintiff. Parker v. Palmer, 4 Barnewall & Alderson, 529; Pierson v. Crooks,

115 N. Y. 539; Bronze Co. v. Gillette, 88 Mich. 231; Stelwagon v. Coal and Gas Co., 2 Marvel's Delaware Rep. pp. 184, & 42 Atlantic 449; Rayfield v. Van Meter, 120 Cal. 416; Mfg. Co. v. Hamilton, 44 S. W. 405; Brown v. Foster, 108 N. Y. 387; Walker v. Davis, 65 N. H. 170; see also, Benjamin on Sales, sec. 701, where the following language is used. "But receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if anything be done by the buyer which he would have no right to do unless he were the owner of the goods." Brown v. Nelson, 66 Vt. 660; Plow Co. v. Meredith, 107 Ia. 498; Tower v. Pauly, 51 Mo. App. 75; Fenwick v. Bowling, 50 Mo. App. 516; Calhoun v. Paule, 26 Mo. App. 274; Mfg. Co. v. Mfg. Co., 42 Mo. App. 307; Long Bros. v. Armsby Co., 43 Mo. App. 253. (3) The testimony of Cochran and Donohue, as to the condition of Maxwell when he was in Little Rock, should have been read in evidence; and Maxwell should have been permitted to testify on that point. Watson v. Race, 46 Mo. App. 546. (4) The court erred in giving and refusing instructions. Wright v. Gillespie, 43 Mo. App. 244; Brummell v. Harris, 148 Mo. 430, 444. (5) The court erred in admitting irrelevant, immaterial and incompetent testimony offered by plaintiff and in rejecting relevant, material and competent testimony offered by defendant.

*Joseph A. Guthrie* attorney for respondent.

(1) That the court did not err in overruling appellant's objection to the deposition of H. K. Cochran. Hoyberg v. Henske, 153 Mo. 64. (2) "The true intent of the parties respecting the delivery and acceptance, from the facts proved, is to be decided by the jury." Glass v. Gelvin, 80 Mo. 297; Strauss v. Fur. Co., 20 So. Rep. 703. And what will consti-

tute an acceptance depends upon the facts and circumstances of the particular case. Camors v. Gomila, 9 Mo. App. 205; 21 Am. and Eng. Ency. of Law, (1 Ed.), p. 556; 2 Benjamin on Sales (4 Am. Ed.), p. 1153.

SMITH, P. J.—This is an action which was brought before a justice of the peace. The statement, filed by the plaintiff, was to the effect that the defendants shipped from Kansas City to plaintiff's order at Daleville, in the State of Arkansas, a carload of hay; at the same time making a draft on plaintiff for $63.37, which was paid. That on the arrival of the hay it was found on inspection to be unmerchantable and not according to contract in any respect; that thereupon plaintiff refused to receive it and so notified defendants and demanded repayment by them of the said amount of $63.37, which was refused. There was a trial of the cause in the circuit court, where it had been removed by appeal, which resulted in judgment for the plaintiff and defendants appealed.

I. The defendants urge as a ground for reversal the action of the court in overruling their objections to the reading by plaintiff in evidence of the deposition of one Cochran. This deposition, we may infer, was regularly taken and certified in every respect except that the jurat of the officer taking the same was not appended thereto. It is insisted that for this omission the deposition should have been excluded from the evidence. There was in force in the court a rule providing that all exceptions to depositions, except for incompetency or irrelevancy, should be considered waived unless filed within two days after the filing of such deposition had been served on the opposite party, or his attorney, and if no such notice had been given such exceptions must be filed at least two days before the cause is set for trial, etc.

The defendants insist that this rule is inapplicable

for the reason that the said deposition was not a deposition within the meaning of the statute. The certificate of the officer was that the deponent was sworn to testify the whole truth of his knowledge touching the matter in controversy; that he was examined and his examination reduced to writing and subscribed to by him in his (the officer's) presence, etc. Besides this, it further appears that the defendants were present at such examination and cross-examined the witness. The omission of the officer to append the jurat to the deposition was a departure from the statutory requirements—section 2898, Revised Statutes 1899—and constituted such an irregularity in the certification as would on motion have justified its suppression by the court. But it was nevertheless a deposition, though irregularly certified. The objection taken to it was not to its competency or relevancy, but to the legal sufficiency of the certification thereof. The defendant could only take advantage of the irregularity in the manner provided by the rule just quoted. Its manifest purpose was to prevent surprise or any undue advantage to be taken in respect to a deposition by one party over the other. A party can not lie by until his adversary has announced himself ready for trial and then for the first time, when he offers to read his depositions, object to them on account of some alleged informality in the taking or authentication thereof. Holman v. Bachus, 73 Mo. 49; Hoyberg v. Henske, 153 Mo. loc. cit. 72, 73; Pump Co. v. Green, 31 Mo. App. 269. The objection to the reading of the deposition was without merit and was properly overruled.

II. The defendants further insist that the court erred in refusing to permit them to show an agreement made by them with the Arkadelphia Lumber Company to take the hay after notice of the refusal of the plaintiff to accept it. The hay had been purchased by plaintiff for the Arkadelphia company and had been ordered to be shipped to Daleville station for it.

After the arrival of the hay there the Arkadelphia company examined it and found it to be "moulded" and "funcky" and so declined to accept it, notifying the plaintiff by letter of its non-acceptance.    The plaintiffs thereupon wrote the defendants, inclosing this letter of the Arkadelphia company notifying them of its refusal to accept the hay and requesting information as to what disposition it should make of the same.    Four days afterwards, the defendants wrote the plaintiff acknowledging the receipt of their letter and stating that "all we can say is to keep an account of the bad bales," etc.    The plaintiff, on receipt of this letter, inclosed it to the Arkadelphia company with the request to unload the hay and make claim on it for that damaged, as per inclosed letter from defendants, and that if it could not do this to notify it (plaintiff) quickly, also expressing the hope that it (the Arkadelphia company) would unload the car and report on what part it would ask a reduction of the price.    To this letter the Arkadelphia company replied that the hay was so badly damaged that it thought it would be better for the defendants to take it back.

The plaintiff, on receipt of this, inclosed it to the defendants with a letter stating that it appeared from the inclosure that the Arkadelphia company had practically refused the hay at any concession and that it was willing to send a man to Daleville to examine the hay and to adjust it with that company; and further, that it did not like to undertake this for it was afraid that company would expect concessions on all the hay; and to this was added a request "to kindly inform us what you wish us to do in the matter."    Defendants' only response to this was "we don't think you will have any more trouble in getting rid of the car."    On receipt of this evasive letter plaintiff promptly wrote to defendants that "we must have instructions from you at once what to do with this car for the Arkadelphia company, as we have informed you, and promptly, too, have

declined to take it.   We have not only done this but we have
sent you their letters, and if you wish to save yourselves the
cost of demurrage you must inform us what you wish done.
We do not propose to take any action in this matter without your
consent, for if we do it will be more than likely that you would
claim that we acted without your consent.   We wrote you on the
fourth very fully in the matter, and will insist upon you in-
forming us what disposition you wish made of this car.   If you
want it unloaded at Arkadelphia by the Arkadelphia company,
so state; if you wish it reshipped here to be stored in our ware-
house, so inform us; if you wish it put to some other place so
inform us."   To this, defendants replied, "We have no further
instructions to give."

Three days after plaintiff had received the defenlants' let-
ter just referred to, it received another from the Arkadelphia
company saying it preferred to have nothing to do with the hay.
This was inclosed to defendants with a request that they state
what disposition should be made of the hay.   Ten days later
on, the plaintiff ordered the car to be shipped to Little Rock,
its place of business, hoping there to get a market for it.   It
then by letter notified defendants of the fact and requested in-
structions as to the disposition of the hay.   "Demurrage $23.
Shall we sell for your account ?   Don't think we can get charges
out," etc.   This brought a letter from defendants saying the
place to handle the hay was at Daleville.   It further stated
that the defendants had had some correspondence with the Arka-
delphia company and that they supposed that company would
take the hay and keep an account of the bad bales.   It was fur-
ther stated in the same connection that "if the hay had been
handled at Daleville promptly, as we wrote you, there cer-
tainly would not have been so much damage on it so we will not
instruct you."   Three days after receipt of this, the plaintiff
wrote defendants two more letters in which it was stated that

if the defendants had informed it that they were correspond-ing with the Arkadelphia company respecting the disposition of the hay that it would have dropped the matter for their action, and that it had put the car at Little Rock to save them any loss.   It offered to return the hay to Daleville at its cost. The defendants replied that the hay need not be returned to Daleville; that the damage that had accrued and the freight to Little Rock were matters for which they were not responsible, but what bales that were actually bad in the car they would, of course, make all right at Little Rock the same as at Arkadel-phia.

The plaintiff on receipt of this wrote the defendant that "we made the Arkadelphia company the proposition to assort the hay and charge us back with the inferior bales, which it re-fused to do and so we informed you.   To help you out in the matter after the Arkadelphia company positively refused to handle the car upon the conditions above named, we wrote you and to which you said "we have no further instructions."   It was further stated in one of the plaintiff's letters that after the hay had been brought to Little Rock and examined, it was found to be in the condition stated by the Arkadelphia company, and that it could not be accepted under the contract.   The fore-going embraces the substance of the written correspondence between these parties.

This correspondence very clearly shows that the plaintiff did nothing to "balk" defendants in their efforts to dispose of the hay.   It is disclosed that the plaintiff was not made aware of the fact that defendants were independently negotiating with the Arkadelphia company in respect to the hay until after it had caused the same to be hauled to Little Rock.   No intimation that such negotiations were in progress was given to plaintiff. How, then, could the defendants' rejected offer of evidence under these circumstances have bound the plaintiff in any way?

There is nothing in the correspondence, nor in any other part of the evidence, tending to prove the assumption by plaintiff of any dominion or control over the hay as owner after it notified the defendants that it had rejected it. Its numerous letters to the defendants show that, while it was unwilling to accept the hay because it was not of the quality called for by the undisputed contract, it was willing to do anything in its power to reduce the defendants' loss to the minimum. After the hay had been rejected by the Arkadelphia company and it had notified the defendants of the fact and requested instructions, and after it had utterly failed to induce that company to accept it on the condition outlined in the defendants' instructions, it had the hay transported to Little Rock where there was a market and where the opportunities of making a sale would be improved. Again it called on the defendants to make known their wishes in respect to the disposition of the hay. The defendants neglected to give full and explicit instructions although they fully recognized the fact of the non-acceptance by plaintiff by entering into negotiations with the Arkadelphia company for the purchase.

If the plaintiff, in its endeavors to assist the defendants, in any way balked the sale by them to the Arkadelphia company, they have only themselves to blame therefor. Had they informed the plaintiff of such negotiations the latter would certainly not have removed the hay pending such negotiations. As the Arkadelphia company would not accept it on the conditions named in defendants' instructions to plaintiff, and as there seems to have been no market for it at Daleville, the act of removal to Little Rock was what a prudent business man would do under such circumstances. We are unable to discover anything in the entire evidence to justify the conclusion that the plaintiff, at any time or by any act, accepted the hay under the contract. Nor does it appear that after it formally

notified the defendants of its rejection that it exercised any right inconsistent with such rejection. The case which the plaintiff's evidence tends to prove is that the plaintiff purchased of the defendants a carload of hay of a specified quality to be delivered at a certain railway station, paying in advance the purchase price and the cost of carriage, and that the defendants subsequently neglected to deliver the hay, or which, in legal effect, was the same thing, they shipped to the designated railway station hay of a different and inferior quality to that which they had sold to the plaintiff. Plaintiff was not bound to accept what it had not purchased. After the rejection of the hay it was proper for it, in the absence of specific instructions, to take such steps in respect to the disposition of the hay as would be most expedient to save defendants from unnecessary loss. Rubin v. Sturtevant, 80 Fed. Rep. 930. Upon principle, it seems to us that the plaintiff, after rejecting the hay because not of the quality called for by the contract, is entitled to recover back the contract price which had been paid in advance. Worner v. O'Brien, 40 Mo. App. 483; Pope v. Allis, 115 U. S 363; Briggs v. Hilton, 99 N. Y. 517. Whether or not the hay shipped was of the quality called for by the contract, or whether or not the plaintiff, after notifying the defendants of its rejection, exercised acts of ownership over it inconsistent with the claim that such hay was different and inferior to that called for by the contract, were issues very fully submitted to the jury by the instructions.

III.   We can not see that the plaintiff's second instruction, which told the jury in effect that there was no evidence of any agreement between defendants and the Arkadelphia company that the latter was to take the hay and keep an account of the bad bales, etc., was, as defendants contend, improper, or that it was prejudicial to the defendants. The cases cited by defendants do not support this contention.

IV. The letter of the Arkadelphia company to plaintiff,

dated March 3, 1897, was rightly admitted in evidence. It appears from the correspondence between plaintiff and defendants, hereinbefore referred to, that the plaintiff had, on February 26, written the defendants inclosing a letter from the Arkadelphia company, in which that company stated that the hay was rotten and funcky and that at least one-half of it was unfit for feed. The defendants, in answer to this, stated that they "note the letter from Arkadelphia company" and that "all we can say is to keep account of the bad bales," etc. The plaintiff thereupon wrote a letter to the Arkadelphia company inclosing that of the defendants and requested that that company unload the hay and make claim on it for the part damaged, as per letter from Brubaker & Co., the shippers. To the request embodied in this last letter the Arkadelphia company wrote the plaintiff the letter of March 3, which defendants contend was improperly read in evidence. This letter of the Arkadelphia company was inclosed to defendants by the plaintiff for the purpose of advising them that the hay could not be disposed of according to their instructions. It was in response to a letter which the plaintiff, as agent of the defendants, was in effect directed to write. It was competent evidence as tending, with the other letters to which we have just referred, to show to a certain extent the nature of the transaction between plaintiff and defendants in respect to the hay and that the plaintiff was then acting in the capacity of agent for defendants in its endeavors to dispose of the hay.

The letters from the Arkadelphia company to defendants of a later date, which were offered in evidence and rejected by the court, did not relate to any issue in the case and were inadmissible for any purpose. Any subsequent agreement or arrangement which these letters may have shown to have been entered into between the defendants and the Arkadelphia company in respect to the hay could have no bearing on any issue in this case.

V.   The plaintiff's manager, Cochran, in his deposition, testified that Maxwell (who subsequently testified for defendants at the trial of the case) called on him at his office in Little Rock and that he was then under the influence of intoxicating liquor.   At the trial the plaintiff read all of the deposition of the witness except that part relating to the intoxication of Maxwell.   The defendants, to sustain the issue in their behalf, offered to read in evidence that part of the deposition of witness Cochran which had been omitted by the plaintiff in the first instance.   The court rejected this offer and of this. the defendants complain.   It seems to us that when the plaintiff declined to read that part of the deposition tending to show that at a specified time and place the witness Maxwell was under the influence of an intoxicant, that thereafter that matter was out of the case and the defendants' offer of this part of the deposition was improper since it tended to establish a collateral fact which the action of the plaintiff had rendered immaterial.

The judgment will be affirmed.   All concur.