DESCALZI FRUIT COMPANY *vs.* WILLIAM S. SWEET & SON, INC.

FEBRUARY 25, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Sales. Agency by Necessity. Perishable Goods.*

On arrival of car of peaches at destination, buyer examined them, and, find-

ing that they were not as ordered, wired seller, "reject car because quality not as ordered, advise diverting without delay Boston this market will not take this quality satisfactory." Seller replied, "Car yours care not what you do with it gave you best stock possible as ordered and hold you responsible for amount draft." Buyer wired, "Will not accept using best judgment for you forwarded Boston." Buyer sent car to Boston, to commission merchants, who had previously sold goods for seller, and instructed them to sell the peaches for benefit of seller. This was done, and seller refused proceeds:—

*Held,* that, the buyer, with the perishable goods in its charge abandoned by the owner, with immediate action imperatively necessary, after notice to the owner, who remained unrepresented, had the right, to protect itself from the freight charges and to prevent the owner from needlessly sacrificing the goods, to act as agent for the seller *ex necessitate rei,* and was justified in forwarding the goods to be sold for the benefit of the seller, and by so doing did not accept them.

ASSUMPSIT.    Heard on exceptions of plaintiff, and overruled.

DUBOIS, C. J.    This is an action of assumpsit, brought by the plaintiffs, copartners in trade, doing business under the firm name of the Descalzi Fruit Company, and all of Pittsburg, in the State of Pennsylvania, against the defendant, a corporation of the State of Rhode Island, located at Providence therein, to recover the price of a carload of peaches sold by the plaintiffs to the defendant. After verdict for the defendant in the Superior Court, the case was brought to this court upon the plaintiff's bill of exceptions.

The plaintiffs, dealers in fruit, having a place of business in the town of Fort Valley, Georgia, agreed by telegraph to deliver to the defendant in Providence a carload of peaches known as "fancy Belles and Thurbers," at $2.25 a carrier. The telegrams comprising the agreement, arranged in their chronological order, are as follows: Defendant to plaintiffs: "July 11th, 1907, Quote price, car, fancy red fruit Belles and Thurbers." Plaintiffs to defendant: "July 11th. Wire received offer fancy Belles Thurbers tomorrows shipment $2.25." Defendant to plaintiffs: "July 12th. Ship car fancy stock your price want best colored stock possible." Plaintiffs to defendant (night message): "F. G. E. number 18943 (443) carriers fine

Belles and few Elbertas." Defendant to plaintiffs: "July 13th. Can't use Elbertas at price and Belles must be fancy high colored expected part Thurbers." Plaintiffs to defendant: "July 13th. Wire received just 15 Elbertas mostly fancy Belles few Thurbers car will please you."

When the car arrived in Providence, the defendant examined the peaches and found that they were not as ordered and immediately wired the plaintiffs as follows: "July 16th. Arrived and opened unsatisfactory reject car because quality not as ordered advise diverting without delay Boston this market will not take this quality satisfactory," to which the plaintiffs replied as follows: "Car yours care not what you do with it gave you best colored stock possible as ordered, and hold you responsible for amount draft." Whereupon the defendant sent this final dispatch to plaintiffs: "Will not accept using best judgment for you forwarded Boston."

It appears that before sending the car to Boston, Massachusetts, the defendant ascertained that Curtis & Company, commission merchants in that city, sold goods for the plaintiffs, and thereupon the defendant communicated with them, advising them that it had a carload of peaches which could not be disposed of in the Providence market, and inquired if this car of fruit could be sold in the Boston market. Receiving an affirmative reply, the defendant forwarded the car to Curtis & Company with instructions to sell the peaches for the benefit of the plaintiffs and to forward the proceeds of sale to them. Curtis & Company, upon arrival of the aforesaid car, sold the fruit and sent the proceeds to the plaintiffs, who declined to receive the same.

The parties have stipulated that the following facts be taken by the court, as proved for the purposes of this decision:

"*First.* The goods in question were sold by Curtis & Company, of Boston, to whom the defendant sent the goods, for the sum of six hundred and thirty-eight dollars and thirteen cents ($638.13).

"*Second.* The aforesaid Curtis & Company, deducted the following items from the gross receipts of said sale:

Freight from Fort Valley, to Boston. . . . . . . $362 63
Expense of unloading said goods . . . . . . . . . .   13 44
Commission of Curtis & Company. . . . . . . . .   44 67
                                                  ─────────
                                                  $420 74

"*Third.* The balance, after deducting said items, to wit, two hundred and seventeen dollars and thirty-nine cents ($217.39), was tendered to said plaintiffs before the bringing of said action, by said Curtis & Company, and also by said defendant. It is further agreed, assuming that the defendant had the right to dispose of the goods through Curtis & Company, as aforesaid, that the said charges of Curtis & Company so deducted as aforesaid are reasonable and proper. It is also agreed that the said defendant has never received any benefit or interest whatever from the use of the aforesaid two hundred and seventeen dollars and thirty-nine cents ($217.39), which were the net proceeds of the sale."

The plaintiffs contend that, even if the peaches shipped by them were not of the quality contracted for, the defendant, by causing the goods to be resold for the benefit of the plaintiffs, exercised such a dominion over them as to constitute an acceptance of the same. The defendant seeks to justify its conduct in causing a resale of the plaintiffs' goods upon two grounds: in the first place, to protect itself against the freight charge; and in the second place, to save the plaintiffs from a total loss in regard to said fruit.

It is proper to consider the circumstances in which the defendant found itself. It was midsummer when the cargo of peaches, from Georgia, inferior in quality to those for which the defendant had contracted and had a right to expect, arrived in Providence, where there was no market for such fruit. The defendant forthwith notified the plaintiff, by telegraph, of its refusal to accept them and asked for instructions concerning the disposal of the peaches in Boston, where there was a market for that grade and quality of fruit. The plaintiffs refused to instruct the defendant in the matter, and claimed performance of their part of the contract. The defendant confronted this condition: a carload of perishable goods, abandoned by the owner,

had been left in its charge by the railroad company, which looked to the defendant for payment of the freight. In order to save the goods and protect the owners to any extent, immediate action was imperatively necessary. Ample notice had been given to the owners, without avail. Evidently they had doubts as to the sincerity of the defendant's refusal, and were too far away to investigate for themselves. Moreover, they made no attempt to employ any agent to look after their interests in Providence. The defendant could have rested upon its rights and remained inactive, with the result that, unless the plaintiffs changed their views regarding the matter and took some steps looking toward the disposition of the fruit; or the railroad company sold the same to pay freight charges; or something unlooked for intervened to prevent it, the peaches would have perished without benefit to any one. In the absence of the plaintiffs, unrepresented, the defendant, having knowledge of the existing conditions and having the goods cast upon it in this emergency, not only had the right to protect itself from the freight charges, but also to prevent the owners from needlessly sacrificing their goods without benefit, and at a total loss to themselves, with additional freight charges, through ignorance and obstinacy.

"It not infrequently happens that the seller, when notified that the goods are not in conformity with the contract and when requested to remove them, fails to do so, claiming that the contract has been properly fulfilled. Under these circumstances it may be clearly the best thing to do, from a business standpoint, for the buyer in whose possession the goods are to sell them at once and leave the question whether the goods fulfilled the terms of the contract or not to subsequent determination. Where goods are perishable or expensive to keep, or of fluctuating value, any other course is attended with loss to one party or the other. Accordingly it has been held, and it seems reasonable, that the buyer, though refusing to take title because the goods are not what he bargained for, may, after notifying the seller of his rejection and requesting him in vain to remove the goods, resell them on account of the seller." Williston on Sales (1909), § 498. And see *Rubin* v. *Sturtevant,* 80

Fed. Rep. 930; *Hitchcock* v. *The Griffin & Skelley Company*, 99 Mich, 447; *Barnett & Company* v. *Terry & Smith*, 42 Ga. 283.

An application of the golden rule is indicated in cases like the present. And for such application the defendant ought not to be penalized through a technicality. As the absent plaintiffs had no agent to take care of their interests, and as it was necessary that their interests should be cared for to save them from loss, the defendant had a right to act as agent for them *ex necessitate rei*. In such a case the utmost diligence and good faith will be exacted from the person who thus elects to bear the burden of agency. There is nothing in the case at bar to indicate that the defendant has in any manner fallen short of these requirements. The defendant, therefore, was justified in forwarding the fruit to be sold for the benefit of the plaintiffs, and by so doing did not accept the goods.

The plaintiffs exceptions are therefore overruled, and the case is remitted to the Superior Court, with direction to enter judgment on the verdict.

*Edward C. Stiness, and Frederick W. O'Connell*, for plaintiff.

*Tillinghast & Murdock, and Michael J. Lynch*, for defendant.