GRAINGER BROS. CO. v. G. AMSINCK & CO., Inc., and three other cases.

(Circuit Court of Appeals, Eighth Circuit. October 13, 1926.)

Nos. 7200–7203.

1. Sales ⟨=⟩166(1).

Buyer of "granulated sugar," being refined while sugar free from molasses, etc., dry and free running, *held* warranted in refusing to accept yellow "Java white" sugar containing molasses and foreign matter.

2. Sales ⟨=⟩124, 127.

Buyer, rescinding contract for purchase of sugar because of quality, need not return goods, but must give seller notice of rejection and election to rescind.

3. Sales ⟨=⟩121, 127.

Buyer, asserting dominion over sugar not of quality bought without notice of rejection to seller, *held* estopped to rescind contract, and institution of suit to rescind and recover price was not notice in itself of rescission, in view of asserted dominion.

4. Sales ⟨=⟩391½, New, vol. 15A Key-No. Series.

Buyer of sugar, who did not give seller required notice of election to rescind contract, *held* not entitled to sell goods to satisfy lien for freight, demurrage, and purchase money paid.

5. Sales ⟨=⟩134.

Buyer of sugar *held* not entitled to sell, as perishable, sugar not of quality bought, without notice to seller that he has elected to rescind contract and offer of reasonable time for removal.

6. Appeal and error ⟨=⟩268(1).

On appeal from judgment in action at law tried by court on stipulation, assignment that findings were not supported by evidence is not reviewable, in absence of specific exception or other challenge to sufficiency of evidence in trial court.

Appeals from and in Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Separate actions by the Grainger Bros. Company, by the Bliss Syrup Refining Company, and by the J. H. Hughes Company against G. Amsinck & Co., Incorporated,

wherein defendant filed a cross-petition to the petition in the last-named case. Decrees for defendant in the three named actions, and judgment dismissing the cross-petition, and plaintiffs separately appeal, and defendant brings error. Affirmed in each case.

William Ritchie, Jr., of Omaha, Neb., for Grainger Bros. Co. and Bliss Syrup Refining Co.

William Ritchie, Jr., and Halleck F. Rose, both of Omaha, Neb., for H. J. Hughes Co.

Joseph B. Fradenburg, of Omaha, Neb. (Francis P. Matthews, of Omaha, Neb., on the brief), for G. Amsinck & Co., Inc.

Before LEWIS, Circuit Judge, and FARIS and PHILLIPS, District Judges.

PHILLIPS, District Judge. The above causes grow out of alleged breaches of contracts to sell sugar. They were argued and submitted together and may be disposed of conveniently in one opinion.

### I. Cause No. 7200.

On April 26, 1920, Amsinck & Co. entered into a written contract with Grainger Brothers Company, for the sale to the latter of 250 tons of "white granulated sugar at 21 cents per pound, * * * f. o. b. San Francisco." The sugar was to be shipped from Java. At the time the contract was entered into the subject-matter of the sale had not been ascertained. The contract provided that Grainger Bros. Company should establish an irrevocable letter of credit. Grainger Bros. Company, through the First National Bank of Lincoln, Neb., and the Continental & Commercial National Bank of Chicago, provided such letter of credit, for the payment at the Wells-Fargo Nevada National Bank of San Francisco of the purchase price of the sugar, upon the delivery to the San Francisco bank of drafts accompanied by proper bills of lading for the shipments of the sugar.

Prior to the arrival of the sugar at San Francisco, Grainger Bros. Company discovered that Amsinck & Co. proposed to deliver in fulfillment of the contract, not white granulated sugar, but Java white sugar, and both by written and oral notice to Amsinck & Co. and by notice to the above-mentioned banks, the contents of which were communicated to Amsinck & Co., notified Amsinck & Co. that Grainger Bros. Company would not accept Java white sugar, but would insist on white granulated sugar as provided in the contract. The sugar arrived at San Francis-

co on November 3, 1920. On November 12, 1920, Amsinck & Co. shipped the sugar to Grainger Bros. Company under bills of lading which improperly described the sugar as white granulated sugar, and presented such bills of lading with drafts attached to the San Francisco bank and collected the full purchase price of the sugar.

While the sugar was in transit, Grainger Bros. Company undertook to prevent the First National Bank of Lincoln and the Continental & Commercial National Bank of Chicago from honoring the drafts. Failing in this, and after the Lincoln bank had paid the drafts and charged the same to the account of Grainger Bros. Company, it received the bills of lading and took possession of the sugar on December 3, 1920. Thereupon Grainger Bros. Company, without notice to Amsinck & Co. that it rejected the sugar, and without notice that it would sell the same for the account of Amsinck & Co. offered the sugar for sale and proceeded to sell the same.

On December 14, 1920, Grainger Bros. Company brought this action to recover the purchase price of the sugar, less what it might be able to realize from a resale of the sugar delivered. In its original petition, Grainger Bros. Company, after alleging the facts above set forth, stated:

"(18) That this plaintiff was, as above set forth, coercively and in violation of its rights compelled to receive and take the said railroad bill of lading in order to protect itself from any further damage and loss on account of the unlawful conversion of its funds by the defendant and at the defendant's instance as above set forth.

"(19) That the sugar which was represented by said railroad bill of lading was at the time of receipt by this plaintiff and the conversion of this plaintiff's funds as above set forth of a value equal to an amount which was at that time seventy thousand dollars ($70,000.00) less than the value of an identical amount of sugar similar in quality to the sugar which the defendant actually contracted to deliver to this plaintiff as hereinbefore set forth.

"That the plaintiff is holding said two thousand two hundred forty-one (2,241) bags of sugar and attempting to sell the same, and when the same is sold will apply the net proceeds thereof to the plaintiff's claim against the defendant on account of said wrongful conversion of this plaintiff's funds as above set forth; that said sugar will not bring this plaintiff more than thirty-five

thousand six hundred fifty-seven dollars and sixty-seven cents ($35,657.67).

"(20) That this plaintiff has been damaged by reason of the aforesaid acts of the defendant as hereinbefore set forth in the sum of $70,000, with interest thereon from the 1st day of December, 1920, until paid."

Grainger Bros. Company proceeded to sell the sugar and realized therefrom a net return of $34,208.73. After the sale of the sugar Grainger Bros. Company filed an amended petition, in which, among other things, it alleged the following:

"(7) That 'white granulated sugar' as that description was understood by the plaintiff and merchants and brokers generally engaged in buying and selling sugars in the United States, and especially in the middle western parts of the United States, where the plaintiff transacts its business and where the aforesaid sale was procured, at that time and for 25 years prior to the time of entering into said contract and the procuring of said letter of credit, as above set forth, was a description which was commonly applied by said merchants and brokers to sugar which had been refined and was pure white, neutral in color, and free from molasses, all of which facts were well known, or should have been well known to the defendant at the time the aforesaid sales contract and letter of credit were procured."

"(12) That the sugar * * * was not actually white granulated sugar as that description has been commonly understood by merchants and brokers generally engaged in buying and selling sugars in the middle western part of the United States for the past 25 years, and as that description at the time said sales contract was entered into and said letter of credit was issued, was commonly known and understood by the plaintiff and said merchants and brokers; that the sugar * * * was not a refined sugar, was not pure white, was not neutral in color, nor was said sugar free from molasses, but * * * was a washed sugar, and had a yellowish cast, and contained more or less molasses, and was dirty and was permeated with black specks and hemp fibers and was properly described as 'white Java sugar,' or 'Java white sugar,' and was not properly described as 'white granulated sugar.'"

"(16) That immediately upon the receipt of the railroad bills of lading, and said sugar, the plaintiff made every effort to sell and dispose of the same for defendant's account, and at the best possible terms and price, and in such manner as to reduce its loss as much as possible, but because of the inferior grade

of sugar the plaintiff was only able to secure on account of the sale thereof the total sum of thirty-four thousand two hundred eight and 73/100 dollars ($34,208.73), which was at the time of the making of the sales thereof, and at the place where said sales were made, to wit, at Lincoln, Neb., the reasonable market value thereof, and the best market price obtainable therefor."

In its answer, Amsinck & Co. denied the allegations of the first amended petition with reference to the meaning of the words "white granulated sugar," and denied the allegations with reference to the kind and quality of sugar tendered under the contract, and alleged "that the said plaintiff received said sugar about the 1st of December, 1920, and immediately upon its receipt sold portions of the said sugar in its ordinary course of business, and never notified the plaintiff that it rejected said sugar, and that the said plaintiff by its conduct did accept said sugar as being in accordance with the terms of the contract by and between the parties hereto."

A written stipulation was entered into, waiving a trial by jury. The cause was transferred to the equity docket and came on duly for trial before the court. The trial court found that Grainger Bros. Company, with knowledge of the kind and character of sugar tendered, received the sugar and, without notice to Amsinck & Co. that it refused to accept the sugar, exercised dominion over, offered for sale, and sold the sugar, and that it thereby elected to accept the sugar under the contract, and could not thereafter rescind the contract and recover back the purchase price.

The weight of the evidence warrants the conclusion that the term "granulated sugar," at the time the contract with Grainger Bros. Company was entered into, and for a long time prior thereto, had a definite and well-established meaning to the sugar trade in the continental United States, namely, "refined pure white sugar, free from molasses and foreign substances, dry and free running," and that the sugar shipped to Grainger Bros. Company was not white granulated sugar, but Java white sugar; that it was yellow in color, contained molasses, specks of dirt, and fiber, and was not free running, and could not be used for the comprehensive purposes for which white granulated sugar is used.

Amsinck & Co. obtained payment for the sugar by a false description thereof in the bills of lading after it had been advised by Grainger Bros. Company that it would not accept white Java sugar, and delivery of the sugar which did not comply with the contract

was virtually forced upon Grainger Bros. Company.

[1] Under the facts above stated, Grainger Bros. Company undoubtedly had the right, when the sugar arrived at Lincoln, to refuse to accept the sugar as a compliance with the contract and to elect to rescind the contract on account of the quality of the sugar tendered. Pope v. Allis, 115 U. S. 363, 371, 373, 6 S. Ct. 69, 29 L. Ed. 393; Rubin v. Sturtevant (C. C. A. 2) 80 F. 930, 932, 26 C. C. A. 259; Harriman v. Richardson, 51 App. D. C. 24; 273 F. 752, 753; Norrington v. Wright, 115 U. S. 188, 203, 6 S. Ct. 12, 29 L. Ed. 366; Wolcott, Johnson & Co. v. Mount, 36 N. J. Law, 262, 13 Am. Rep. 438; Reed v. David Stott Flour Mills, 216 Mich. 616, 185 N. W. 715; Truman's Pioneer Stud Farm v. Hansen, 108 Kan. 717, 196 P. 1087, 1088; Strauss v. Nat. Parlor Furniture Co., 76 Miss. 343, 350, 24 So. 703, 706.

In Pope v. Allis, supra, the court said: "When the subject-matter of a sale is not in existence, or not ascertained at the time of the contract, an undertaking that it shall, when existing or ascertained, possess certain qualities, is not a mere warranty, but a condition, the performance of which is precedent to any obligation, upon the vendee under the contract; because the existence of those qualities being part of the description of the thing sold becomes essential to its identity, and the vendee cannot be obliged to receive and pay for a thing different from that for which he contracted. * * * 'A statement' in a mercantile contract 'descriptive of the subject-matter or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty in the sense in which that term is used in insurance and maritime law, that is to say, a condition precedent upon the failure or non-performance of which the party aggrieved may repudiate the whole contract.' "

[2] If Grainger Bros. Company elected to rescind the contract, what were its duties with reference to the sugar?

First, it was not required to return the sugar to Amsinck & Co. The rule is stated by Professor Williston in his work on Sales (2d Ed. vol. 2, § 497) as follows:

"Sec. 497. The buyer need not return goods at common law.

"If goods have been sent to a buyer of a kind or quality which he never agreed to take, the seller is a mere volunteer and the buyer is in the position of a bailee who has had goods thrust upon him without his as-

sent. Doubtless a buyer in such a position must take reasonable care of the goods, but nothing more than that can be demanded of him. Accordingly he is under no obligation to return the goods to the seller, and after notice that the goods have not been and will not be accepted the seller must assume the burden of removing them."

See, also, Strauss v. Furniture Co., supra; Unadilla Silo Co. v. Hull & Son, 90 Vt. 134, 96 A. 535, 538; Alden v. Hart, 161 Mass. 576, 37 N. E. 742; Mulcahy v. Dieudonne, 103 Minn. 352, 115 N. W. 636; Rheinstrom v. Steiner, 69 Ohio St. 452, 69 N. E. 745, 100 Am. St. Rep. 699; Spaulding v. Hanscom, 67 N. H. 401, 32 A. 154; Starr v. Torrey, 22 N. J. Law, 190.

Second, it was the duty of Grainger Bros. Company, however, to give notice of its rejection of the sugar and its election to rescind the contract, to Amsinck & Co. and to request Amsinck & Co. to take away the sugar. Johnston v. Lanter, 87 Kan. 32, 123 P. 719, Id., 98 Kan. 62; 157 P. 266; Bastian Bros. Co. v. Loomis, 185 Iowa, 1379, 170 N. W. 745; Carman Distributing Co. v. Cascade Laundry Co., 111 Wash. 487, 191 P. 392; Burrell v. Southern California Canning Co., 35 Cal. App. 162, 169 P. 405; Norrington v. Wright, 115 U. S. 188, 203, 204, 205, 6 S. Ct. 12, 29 L. Ed. 366; Lovell v. Isidore Newman & Son (C. C. A. 5) 192 F. 753, 756, 113 C. C. A. 39; McDonald v. Kansas City Bolt & Nut Co. (C. C. A. 8) 149 F. 360, 364, 79 C. C. A. 298, 8 L. R. A. (N. S.) 1110; Roxford Knitting Co. v. Hamilton Mfg. Co. (C. C. A. 3) 205 F. 842, 848, 849, 124 C. C. A. 44; Foss-Schneider Brewing Co. v. Bullock (C. C. A. 6) 59 F. 83, 89, 8 C. C. A. 14; Chapman v. Morton, 11 M. & W. 533; Rubin v. Sturtevant, supra; 35 Cyc. 229.

[3] Counsel for Grainger Bros. Company insist that it was not required to give such notice, because, had it done so, the evidence shows that Amsinck & Co. would not have received back the sugar, would not have reimbursed the Grainger Bros. Company for its outlays for freight and demurrage, and would not have returned the purchase price, and that the action brought was in itself sufficient notice. If Grainger Bros. Company had stored the sugar for Amsinck & Co., and had commenced on December 14, 1920, an unequivocal suit for the return of the purchase money, and had claimed a lien upon the sugar for freight and demurrage, we would be inclined to agree with the contention of counsel. But it did not do this. On the contrary, it asserted dominion over the

sugar; it dealt with the sugar as its own; without notice of rejection to Amsinck & Co., it offered for sale and sold the sugar and thereby became estopped to rescind the contract. Rice v. Friend Brothers (Iowa) 146 N. W. 748; Jones v. Werthan Bag Co. (Mo. Sup.) 254 S. W. 4, 12; Carman v. Cascade Laundry Co., supra; Scriven v. Hecht (C. C. A. 2) 287 F. 853, 858, 860; Lyon v. Bertram et al., 20 How. 149, 154, 15 L. Ed. 847; Thomas China Co. v. Raymond Co. (C. C. A. 6) 135 F. 25, 27, 67 C. C. A. 629; Buckstaff v. Russell & Co. (C. C. A. 8) 79 F. 611, 25 C. C. A. 129; Dodsworth v. Hercules Iron Works (C. C. A. 6) 66 F. 483, 13 C. C. A. 552; Foss-Schneider Brewing Co. v. Bullock, supra.

[4] Counsel for Grainger Bros. Company further assert that under the facts it had a lien upon the sugar for the amount of the freight, demurrage, and purchase money paid by it, and that it had a right, without notice to Amsinck & Co., to sell the sugar and apply the net proceeds in satisfaction of the lien. In support of this contention, counsel cite Williston on Sales (2d Ed.) vol. 2, § 610. This section, in part, reads as follows:

"The buyer need not, however, actually deliver the goods to the seller unless the seller repays any portion of the price which has been paid. The buyer has a lien on the goods to secure such repayment with, it may be supposed, similar remedies to those applicable to a seller's lien."

In support of the text, the author cites the following authorities: Wilson & Co. v. Werk Co. (Co. Ct.) 104 Ohio St. 507, 136 N. E. 202, 24 A. L. R. 1438; Levy v. Chonavitz, 163 N. Y. S. 658; Feinman v. Weil, 105 Misc. Rep. 298, 173 N. Y. S. 11; Weeks v. Johnson Co., 116 Wis. 105, 92 N. W. 794; Hall v. Bank of Baldwin, 143 Wis. 303, 127 N. W. 969; Kenney v. Anderson (Ky.) 81 S. W. 663. The first four cases above cited were based upon statutory provisions giving the buyer a lien. In Kenney v. Anderson, supra, where a contract for the sale of a machine with a warranty provided that if it did not fulfil the warranty it should be returned, and the buyers were unable to make the machine work properly, and thereafter the seller's agent collected part of the purchase price under an agreement that if the machine could not be made to fulfill the warranty, the seller would take it back and refund the money, the court held that on the seller's failure to make the machine work properly, the buyers were entitled to require a return of the consideration before delivering possession of the machine to the seller. In Hall v. Bank of Baldwin, supra, it was held that a court of equity might give the buyer a right equivalent to a lien where necessary to protect the buyer's interests. We doubt that the buyer has a lien, in the absence of express statutory provision therefor, but we deem it unnecessary to decide whether such lien exists. There could be no such lien, unless the contract were rescinded and the title left or reinvested in the seller. If the purchaser elects to rescind the contract, he must notify the seller of such election. He cannot accept the goods, deal with them as his own, and thereafter claim rescission.

[5] Counsel for Grainger Bros. Company further assert that the sugar in question was perishable in its nature, that the market was declining, and that it was for the best interests of both parties that the same should be sold, and, because of those facts, it had the right under the circumstances to resell the sugar. Undoubtedly, a buyer who has rescinded a contract may under certain circumstances resell the sugar for the account of the seller; but the buyer must first give notice to the seller that he has elected to rescind the contract, and that unless the seller removes the goods he will within a reasonable time thereafter sell the sugar for the account of the seller. Rubin v. Sturtevant, supra; Chapman v. Morton, supra; Descalzi Fruit Co. v. Sweet & Son, Inc., 30 R. I. 320, 75 A. 308, 27 L. R. A. (N. S.) 932, 136 Am. St. Rep. 961; Strauss v. Nat. Parlor Furniture Co., supra; Hitchcock v. Griffin & Skelley Co., 99 Mich. 447, 58 N. W. 373, 41 Am. St. Rep. 624; Jones v. Bloomgarden, 143 Mich. 326, 106 N. W. 891, 895; Truman's Pioneer Stud Farm v. Hansen, supra; Little Rock Grain Co. v. Brubaker & Co., 89 Mo. App. 1; Columbian Nat. Bank v. White, 65 Mo. App. 677; note, 24 A. L. R. 1445; Williston on Sales (2d Ed.) vol. 2, § 498.

In Strauss v. Nat. Parlor Furniture Co., supra, the court said:

"And, if the goods do not conform to the terms of specification as to qualities (the existence of the qualities in such case being part of the thing sold, and essential to its identity, and a condition precedent to the sale), the buyer can notify the seller that he rejects them, that they are at his (the seller's) risk, and if, within a reasonable time after such notice, the seller does nothing, the buyer may sell them to the best advantage, in good faith, for the seller's account. It is not necessary that the buyer, in an executory contract depending for validity upon accept-

ance after examination, should actually return, or offer to return, the goods, especially where the distance is great, and the freight charges large. Benj. Sales (6th Ed.) p. 603; Swann v. West, 41 Miss. 104; Stevenson v. Burgin, 49 Pa. St. 46; Lucy v. Monflet, 5 Hurl. & N. 233; Heilbutt v. Hickson, L. R. 7 C. P. 452; Grimoldy v. Wells, L. R. 10 C. P. 394. * * * In making the sale referred to by the buyer, he must do so within a reasonable time after promptly rejecting the goods and notifying the seller of his rejection of them. He can only act as the agent of the seller in making this sale, from the 'necessity of the case' (Swann v. West, 41 Miss. 104), and should wait a reasonable time to permit the seller to act for himself; and, if the buyer sells, he can reimburse himself only such expenses as were reasonably incurred on account of the seller about the sale, and within the time which would be reasonable to wait before selling."

In Chapman v. Morton, supra, the facts were these: Goods had been shipped to the buyer which were not satisfactory to him, and he gave notice that, if no directions were given by the sellers, he would sell the goods for the best price he could get, and apply the proceeds in part satisfaction of his damages. The sellers' reply indicated that they considered a valid sale had been made, and that the buyer was liable for the price. Later the buyer advertised the goods and sold them in his own name to a third person. The sellers brought an action for the purchase price. The court held the buyer liable, and in the opinion said:

"If the defendant intended to renounce the contract, he ought to have given the plaintiffs distinct notice at once that he repudiated the goods, and that on such a day he should sell them by such a person for the benefit of the plaintiffs."

Grainger Bros. Company had no right to resell the sugar without first notifying Amsinck & Co. that it would not accept the same as a compliance with the contract, and that unless Amsinck & Co. took charge of the sugar it would proceed to resell the same for the account of Amsinck & Co., and without waiting a reasonable time, which would depend upon the circumstances of the case, for Amsinck & Co. to act.

We therefore conclude that Grainger Bros. Company, by its acts of offering the sugar for sale, exercising dominion over the sugar and dealing with it as its own, without any notice to Amsinck & Co. that it would not accept the sugar under the contract, irrevocably elected to accept the sugar, and could not thereafter elect to rescind the contract on account of the quality of the sugar. The question of what other rights, if any, Grainger Bros. Company had against Amsinck & Co. because of the failure to deliver sugar which complied with the contract of sale is not here presented, and is not determined.

The decree is affirmed with costs.

## II. Causes No. 7201 and No. 7202.

The contracts and the facts in cause No. 7201, Bliss Syrup Refining Company v. Amsinck Refining Co., and in cause No. 7202, H. J. Hughes Co. v. Amsinck & Co., were substantially the same as in cause No. 7200.

In 7201, the purchaser, Bliss Syrup Refining Company, was unable to sell the sugar, and used the same in its business. It undertook to rescind the contract and recover the purchase price from Amsinck & Co. less the reasonable value of the sugar delivered.

In 7202, the purchaser, H. J. Hughes Company, sold the sugar before the suit was commenced. H. J. Hughes Company undertook to rescind the contract and recover the purchase price less the sale price of the sugar.

The trial court found that each purchaser had accepted the sugar under its respective contract to purchase, and could not thereafter rescind and recover the purchase price.

For the reasons above stated in cause No. 7200, the decrees in causes No. 7201 and No. 7202 are also affirmed, with costs.

## III. Cause No. 7203.

On May 8, 1920, Amsinck & Co. entered into another contract with H. J. Hughes Company to sell to the latter "100 tons of white granulated sugar." Amsinck & Co. tendered 100 tons of Java white sugar in performance of such contract. H. J. Hughes Company refused to accept the same. Amsinck & Co. sold the sugar under its seller's lien, applied the net proceeds on the purchase price, and filed a cross-petition to the petition filed by H. J. Hughes Company in cause No. 7202, to recover the balance of the purchase price. H. J. Hughes Company set up as a defense to the cross-petition that the contract called for white granulated sugar, that white granulated sugar among merchants and dealers in sugar in the United States meant refined sugar, neutral in color, free from molasses and foreign substance, dry and free running, and that the sugar tendered in performance of the contract was not white granulated sugar, but was a washed

sugar of yellowish cast which contained molasses and other foreign substance, and was Java white sugar.

[6] The parties filed a written stipulation waiving trial by jury. The cross-petition was not transferred to the equity docket, but was tried by the court without a jury as an action at law. The court made and filed special findings of fact and conclusions of law. By special finding numbered 23, the court found that the words "white granulated sugar" in the contract, meant refined pure white sugar, free from molasses and foreign substance, dry, and free running. By special finding numbered 24, the court found that the sugar shipped and tendered to H. J. Hughes Company did not fulfil the description of the sugar in the contract of sale, and that H. J. Hughes Company was justified in rejecting the same. The court entered a judgment dismissing the cross petition at the costs of Amsinck & Co. This is a writ of error from that judgment.

The assignments of error set out in the brief and argued present the single contention, namely, that special findings numbered 23 and 24 were not supported by substantial evidence.

In Wear v. Imperial Window Glass Co., 224 F. 60, 63, 139 C. C. A. 622, 625, this court said:

"When an action at law is tried without a jury by a federal court, and it makes a general finding, or a special finding of facts, the act of Congress forbids a reversal by the appellate court of that finding, or the judgment thereon, 'for any error of fact' (Revised Statutes, § 1011 [U. S. Comp. Stat. 1913, § 1672, p. 700]), and a finding of fact contrary to the weight of the evidence is an error of fact.

The question of law whether or not there was any substantial evidence to sustain any such finding is reviewable, as in a trial by jury, only when a request or a motion is made, denied, and excepted to, or some other like action is taken which fairly presents that question to the trial court and secures its ruling thereon during the trial. * * * An exception to any ruling which counsel desire to review, which sharply calls the attention of the trial court to the specific error alleged, is indispensable to the review of such a ruling."

See, also, First National Bank of Ardmore v. Litteer (C. C. A. 8) 10 F.(2d) 447.

At the trial below, counsel for Amsinck & Co. did not, by specific exception to the findings, by request for additional findings, or by motion or other like action, challenge the sufficiency of the evidence to support the findings, and did not sharply call to the attention of the trial court the alleged error which it now urges. It follows that the matters assigned as error are not open to review here.

The judgment is therefore affirmed.