## C. & M. L. WHITCOMB v. TIMOTHY DENIO.

*Contract.   Fraud.   Rescission.   Evidence.   Practice.*

Assumpsit will lie after rescission of contract of sale for money paid for property the purchase of which was induced by fraud, and any legitimate evidence tending to prove that the purchase was so induced, is material and admissible therein. Thus: in assumpsit to recover money paid for promissory notes that plaintiffs were alleged to have been so induced to purchase, plaintiffs were permitted to introduce evidence tending to prove that defendant, to induce plaintiffs to purchase, represented that the notes were secured by mortgage on certain land, that he had seen the land and the record of the title thereof, that there was no other mortgage or claim on the land, that the land was ample security, and that the notes were good and all right. The land was incumbered, and defendant knew it. *Held*, that although certain of those repesentations, as, *e. g.*, that the notes were all right, were but the expression of opinion, and therefore not the basis of an action, they amounted, when taken together, to representations as to material matters of fact, and that the evidence thereof was, therefore, admissible.

In such case the defrauded party is bound to rescind within a reasonable time after discovering the fraud, or after learning of some fact that should raise a suspicion of it — not within a reasonable time after mere acquisition of the means of so discovering or learning. Thus : defendant told plaintiffs they could verify his representations by inquiring of certain persons who in fact knew their falsity. Plaintiffs made no inquiry, and did not discover the fraud until about two years thereafter, while searching the records preparatory to foreclosing the mortgage by which the notes were ostensibly secured. *Held*, that plaintiffs had a right to rely on defendant's representations, and that the time within which rescission should be made began to run when the fraud was discovered, not when the representations were made.

The evidence bearing on the question of whether plaintiffs exercised their right to rescind within a reasonable time was unconflicting. The court submitted that question to the jury. *Held*, not a mere question of law, but a question of mixed law and fact, and that there was no error.

Plaintiffs discovered the fraud on February 6, a little more than two years after its perpetration. On the next day they went to consult their lawyer, who lived twelve miles distant. He was absent, and they did not see him; but they learned that he was to go near to their place of residence in a few days, and arranged to be notified when he went there. He went there on February 19 or 20, and plaintiffs then saw him, and on the same day offered to rescind. *Held*, that under the circumstances the offer was made within a reasonable time.

It appeared that between the time of the sale of the notes and the time of the discovery of the fraud, the maker of the notes had a little property which was taken in attachment by other creditors. The court charged that if plaintiffs offered to return the notes in the same condition in which they took them, they did all that was necessary to place defendant *in statu quo*. *Held*, no error.

*Semble* that if the purchaser do not affirm or acquiesce in the contract after discovering the fraud, mere delay in rescinding, for the purpose of deliberating, will not deprive him of the right to rescind, if during the delay the position of the vendor has not been altered.

GENERAL ASSUMPSIT. Plea, general issue, and trial by jury, April Term, 1879, ROYCE, J., presiding.

The plaintiffs sought to recover, with interest, the sum of $724, paid to the defendant, on December 16, 1874, for eight promissory notes for the aggregate sum of $756.36, signed by Francis Trainer, and payable, one on December 1, 1875, and one each year thereafter, with interest annually. The plaintiffs offered to prove that the defendant, at the time he sold the notes to the plaintiffs, and to induce them to purchase, represented that the notes were secured by a mortgage on seventy-five acres of land in Fairfield, that he had seen the land and examined the records in the town clerk's office, to ascertain the condition of the title, that the land afforded ample security for the payment of the notes, that there was no other claim or mortgage on the land, and that the

notes were good and all right. To the admission of such evidence
the defendant objected, but it was admitted, to which the defend-
ant excepted.

The testimony of both parties tended to show that at the time
of the sale of the notes, the defendant told the plaintiffs that they
could find out about the farm and notes by inquiring of A. G
Soule, then town clerk of Fairfield, or of Hugh McGinn.

The plaintiffs' evidence, which was uncontradicted, further tend-
ed to show that the plaintiffs lived sixteen miles from the land
and from the maker of the notes, and fourteen miles from the
town clerk's office, and knew nothing of the land and of Trainer,
except what the defendant so told them, and that they relied on
the defendant's representations, and would not have purchased
the notes if they had not believed them to be true. The plaintiffs'
evidence also tended to show that the defendant's representations
were false, and to the defendant known to be so. It appeared that
on February 15, 1859, Hugh and Catharine McGinn, who then
owned the land, conveyed it by deed of warranty to Joseph Soule,
and that Soule leased it to said Hugh by a perpetual lease, reserv-
ing rent at the rate of $75 per annum, but agreeing that he would
give him a quit-claim deed at any time on payment of $926, and
all rent in arrear; and that on March 30, 1869, said Hugh con-
veyed by quit-claim deed to Trainer, and took from him a mort-
gage conditioned for payment of said rent, and of the notes that
were sold to the plaintiffs. It was conceded that said lease was
an incumbrance on said land at the time the defendant made
the representations in reliance on which the plaintiffs purchased
said notes, and that the defendant knew it, but did not disclose
it to the plaintiffs. The plaintiffs' evidence tended to show that
the incumbrance of the lease then amounted to $1727.92, and
it appeared that the land was then worth about $1400. The
plaintiffs' testimony tended further to show that they learned of
the existence of said lease, and of the falseness of the defendant's
representations on February 6, 1877, when they examined the
records by direction of their counsel, with a view to seeing if
there was any subsequent incumbrance, preparatory to foreclos-
ing; that on the next day they went to Sheldon, twelve miles

distant, to consult Hogan, their counsel, but, he being away from home, they did not see him ; that they then learned that he was to be at Enosburgh, a place near where the plaintiffs lived, within a few days, and made arrangements to be notified so as to see him there ; that Hogan went to Enosburgh on February 19 or 20, when the plaintiffs saw him, and immediately after which they tendered the notes back to the defendant in the same condition in which they took them, no part of them having been paid, and, the property then being incumbered as above stated, offered to rescind their contract, and demanded the sum of $724, with interest. The defendant introduced evidence, which was uncontradicted, tending to show that Trainer had a small amount of attachable property at different times after the sale of the notes, and before the discovery of the fraud, which was attached by other creditors ; and it appeared that soon after the offer to rescind, the holder of the lease brought an action of ejectment against Trainer, and therein caused him to be ejected. The plaintiffs brought the notes into court and offered them to the defendant, but he refused to receive them. The defendant seasonably objected and excepted to the admission of evidence of false representations, and claimed that the action could not be sustained on such evidence, and that if, by applying to A. G. Soule or Trainer or McGinn, the plaintiffs could have ascertained the state of the title and the value of the security, but neglected to do so, they could not recover. He also claimed that it was the plaintiffs' duty to offer to rescind within a reasonable time after they had the means of discovering the fraud ; that if they had such means two years or more before making such offer, they could not recover ; that at the time the offer was made the defendant could not be placed *in statu quo* because he was deprived of security that he might have had, and of what he might have collected on the notes, and that, if the jury should so find, the plaintiffs could not recover.

The court charged that if the defendant represented that there was no other claim or mortgage on the land, knowing that representation to be false, and intending the plaintiffs to rely on it as true, and the plaintiffs made the purchase relying on it, the plaintiffs had a right to rescind the contract on ascertaining that such

49

representation was false; that the plaintiffs had a right to rely on such representation, and were not bound to make inquiry or examination to ascertain its truth; that it was their duty to exercise their right to rescind within a reasonable time after discovering that the representation was false; that there was no arbitrary rule by which to determine what would be a reasonable time, as what would be a reasonable time would depend on the circumstances of each case; that that was a question for the jury on all the evidence; and that the plaintiffs, having tendered the notes to the defendant in just such condition as they were in when purchased, had offered to place the defendant *in statu quo*, in the manner required by law.

To the charge given, the defendant excepted. Verdict was returned for the plaintiffs, and the court rendered judgment thereon; to which the defendant excepted.

*J. E. Marsh* and *H. S. Royce*, for the defendant.

General assumpsit cannot be maintained on proof of false representations—certainly not unless there is a total failure of consideration. 2 Chit. Cont. 923.

The testimony admitted to show that the notes were all right, that they were good, and that the land mortgaged was ample security, was inadmissible. *Veasey* v. *Doton*, 3 Allen, 380; *Gordon* v. *Parmelee*, 2 Allen, 212; *Brown* v. *Leach*, 107 Mass. 364; *Homer* v. *Perkins*, 124 Mass. 431; *Belcher* v. *Costello*, 122 Mass. 189.

Whether a contract is rescinded within a reasonable time, is, when the facts are undisputed, a question of law. *Holbrook* v. *Burt*, 22 Pick. 546, 555; *Healy* v. *Utly*, 1 Cow. 345; *Kingsley* v. *Wallis*, 14 Me. 57; *Green* v. *Dingsley*, 24 Me. 131; *Hill* v. *Hobart*, 16 Me. 164; *Pratt* v. *Farrar*, 10 Allen, 519; *Williams* v. *Powell*, 101 Mass. 467; *Spoor* v. *Spooner*, 12 Met. 281; *Gilmore* v. *Wilbur*, 12 Pick. 120; *Newkirk* v. *New York & Harlem Railroad Co.* 38 N. Y. 158; *Hedges* v. *Hudson River Railroad Co.* 49 N. Y. 223; *Barbour* v. *White*, 37 Ill. 164; *Leaming* v. *Wise*, 17 Pa. St. 173; *Morgan* v. *McKee*, 77 Pa. St. 228.

The jury should be instructed as to the legal effect of the facts

which the evidence tends to show. *Rice* v. *Dwight Manufacturing Co.* 2 Cush. 80.

The plaintiffs could not rescind after such a lapse of time, having all the time had the means of discovering whether the representations were false. *Farnam* v. *Brooks*, 9 Pick. 212; *Dodge* v. *Essex Insurance Co.* 12 Gray, 65; *Poor* v. *Woodburn*, 25 Vt. 234; *Matteson* v. *Holt*, 45 Vt. 336, 342; *Ross* v. *Titterton*, 6 Hun, 280; *Septon* v. *Fritlock*, 13 Alb. L. J. 27. The right of rescission must be exercised at the earliest convenient moment after discovering the fraud. *Masson* v. *Bovet*, 1 Denio, 69; *Seymour* v. *Cooper*, 25 Vt. 141; *Morgan* v. *McKee*, *supra*.

The parties could not be placed *in statu quo*, and, therefore, there was no right of rescission. 2 Chit. Cont. 1092, and notes. The withdrawal of the evidence on this subject from the jury was erroneous.

The omission of the defendant to communicate to the plaintiffs knowledge of the fact that there was such lease would not, of itself, make the defendant liable. An omission to communicate a material fact within the knowledge of the seller, of which the seller knows the buyer to be ignorant, is not fraudulent, unless done with intent to deceive. 2 Chit. Cont. 1049, and note; *Hanson* v. *Edgerly*, 9 Fost. 343; *Stone* v. *Denny*, 4 Met. 151; 3 Wait Act. & Def. 438, s. 7.

The court erred in charging that the plaintiffs were under no obligation to examine the records or make inquiry in relation to the title and security. 2 Chit. Cont. 1039–1040.

*C. P. Hogan* and *H. R. Start*, for the plaintiffs.

Where the vendor of personal property is guilty of fraud in making the contract of sale, the vendee may stand to the bargain and recover damages, or rescind the contract and recover back what he has paid. *Gates* v. *Bliss*, 43 Vt. 299, and cases *passim*. An offer to rescind is effectual, whether accepted or not. 5 Wait Act. & Def. 632. General assumpsit will lie for the money. *James* v. *Hodsden*, 47 Vt. 127; *Loomis* v. *Wainwright*, 21 Vt. 520; 1 Chit. Cont. 692, 702, 704; *Thornett* v. *Haines*, 15 M. & W. 367; *Bradford* v. *Manly*, 13 Mass. 139.

The right to rescind is seasonably exercised, if exercised within a reasonable time after discovery of the fraud. *Gates* v. *Bliss, supra; Esty* v. *Read,* 29 Vt. 278; *Powell* v. *Woodworth,* 46 Vt. 378; *Baker* v. *Lever,* 67 N. Y. 304; *Michigan Central Railroad Co.* v. *Dunham,* 30 Mich. 128; 5 Wait Act. & Def. 508; *Lane* v. *Latimer,* 41 Ga. 171.

What is a reasonable time is a question for the jury. *Baker* v. *Lever* and *Esty* v. *Read, supra; Rothchild* v. *Rowe,* 44 Vt. 389; *Belun* v. *Western Union Telegraph Co.* 7 Reporter, 710; *Molitor* v. *Robinson,* 7 Reporter, 720; *Rodney* v. *Royal,* 8 Reporter, 27.

The plaintiffs had a right to rely on the defendant's representations, and were under no obligation to make inquiry. *Harlow* v. *Green,* 34 Vt. 379; *Ward* v. *Wiman,* 17 Wend. 193; *Culver* v. *Avery,* 7 Wend. 380; *Stevens* v. *Giddings,* 7 Reporter, 618; *Mead* v. *Bunn,* 32 N. Y. 275; *Matlock* v. *Todd,* 19 Ind. 130.

A return of the notes in the condition in which they were received was a placing of the defendant *in statu quo.* *Poor* v. *Woodburn,* 25 Vt. 234; *Hammond* v. *Pennock,* 61 N. Y. 145; *Spencer* v. *St. Clair,* 57 N. H. 9; 7 Wait Act. & Def. 469, s. 3; *Gatling* v. *Newell,* 9 Ind. 572.

The opinion of the court was delivered by

Ross J.   A purchaser induced to make a purchase by fraud, on discovering the fraud, may affirm the contract and bring an action to recover the damages occasioned by the fraud; or, if it is then in his power to place the vendor *in statu quo,* he may tender back the purchase, rescind the contract, and, if the price is unpaid, defend when sued for its recovery, or, if the price of the purchase has been paid, sustain an action against the vendor for the money paid.   Such contracts are not void, but voidable at the election of the defrauded party.   In whichever form of action the question may arise, the establishment of the fact that the contract was induced by fraud, is material, and any legitimate evidence to prove such fact, admissible.   In our judgment the evidence objected and excepted to, tended to establish that the plaintiffs were induced to purchase the notes by the fraud of the defendant.   If

believed by the jury it showed that the defendant not only stated that the notes were good, but that they were secured by mortgage on seventy-five acres of land in Fairfield, and that there was no other mortgage or claim on said land, which last was then known to the defendant to be false. The whole of the defendant's representations on that occasion respecting the notes was admissible, although some selected portions thereof, if standing alone, would be but the expression of an opinion, and for that reason would not subject the defendant to an action for their falsity. This is probably true of the naked representation that the notes were good and all right, but, when taken altogether, this expression of opinion is supported and made to rest on a statement of what he claimed to be facts personally known by him, in regard to how the notes were secured, and that they were a first and only claim on the security, which statement is shown to have been then known by him to be false. This evidence was properly admitted. These representations of facts, as of his own knowledge acquired from a personal examination of the land and of the records of the title thereof, made by the defendant to induce the purchase, the plaintiffs had the right to rely upon, and were not put upon inquiry in regard to their falsity by the fact that they were told by the defendant that they could verify them by inquiry of A. G. Soule, town clerk of Fairfield, or of Hugh McGinn. Such reference to parties who would be likely to know of their truth or falsity, had a tendency to avoid and put to rest any suspicion of the falsity of his representations. The plaintiffs had the right to rely upon the representations so assuringly made, until some fact came to their knowledge tending to raise at least a reasonable suspicion of their falsity. It is not the right of the defendant to complain that his own representations gained credence, and left no suspicion in regard to their truthfulness resting in the minds of the plaintiffs. The court correctly refused to comply with the defendant's request, and there was no error in its charge on this subject. The plaintiffs were under no duty, and consequently did not lose their right, to rescind, by delay in the exercise of that right until they discovered the fraud. The defendant by his request only claimed that they were bound to exercise this right within a rea-

sonable time after they were legally chargeable with a knowledge of the fraud. This was the rule which the court adopted, and is clearly the correct rule. In some of the cases it is said that the defrauded party must offer to rescind " immediately ", " at once ", " at the earliest practicable moment" after discovering the fraud. All these expressions are only another form of declaring that it must be done within a reasonable time. What is a reasonable time must be determined by the circumstances of each case, depending upon where the parties reside relatively to each other, what must be done to make an offer of return of the purchased property, the means at hand to determine whether the party can be placed *in statu quo*, and various other elements. It would seem to be the better-established doctrine that if the purchaser do nothing to acquiesce in or affirm the contract, after discovering the fraud, mere delay for the purpose of deliberation longer than a reasonable time to disaffirm the contract, will not defeat his right to rescind, if during such delay the position of the vendor has not been altered. Benj. Sales, s. 452. The jury have found under proper instructions that the plaintiffs tendered back the notes in the same condition they were in when purchased, and demanded a return of the money paid therefor within a reasonable time after they were made aware of the fraud. The defendant claims that the court erred in submitting this question to the jury, inasmuch as it is found that the facts bearing upon whether they exercised their right to rescind within a reasonable time were uncontradicted. He insists that it was a question of law on the undisputed facts to be determined by the court. If this claim should be admitted, on the undisputed facts, we think the jury determined this question in the same manner in which it would have been the legal duty of the court to have determined it. Whatever may be the rule in other States in regard to its being the duty of the court, when the facts are undisputed, to determine, as a matter of law, whether a thing has been done within a reasonable time, or with reasonable care, diligence, or prudence, or to determine any other fact which involves the judgment of the trier upon an existing state of facts and circumstances, it has been the almost universal practice in this State, from the earliest rec-

ollection of the oldest members of the court and bar, to submit such question to the determination of the jury. In determining such questions of judgment upon a state of facts varying in almost every case, as a matter of law, the judgment of one or but three men, at most, controls, and that, the judgment of a particular class of men, not always the most conversant with all the details and difficulties of the administration of the practical affairs of life. Such questions can hardly be said to be pure questions of law, but rather mixed questions of law and fact. In submitting such questions to the determination of the jury, the average judgment of twelve practical men, versed in all the ordinary affairs of life, is obtained. If but a single fact is involved, and not a combination of facts and circumstances, the determination may become a question of law addressed solely to the court. Hence, there was no error in submitting this question to the jury. Nor was there any error in the charge in respect to the defendant's being placed *in statu quo* by the return of the notes in the same condition as when received. The plaintiffs had not done nor omitted anything by which they were unable to return the notes in the same condition as when received. The defendant is presumed to have had the money received for the notes so that he could have returned the same. The fact that the land may have depreciated in value, or the prior claim thereon become larger, or that the maker of the notes may have had property that might by possibility have been attached, while the plaintiffs were relying upon the defendant's fraudulent representations, cannot defeat the plaintiffs' right to rescind. To give the defendant the advantage of these consequences, if they arose before the fraud was discovered, would be to allow him to take advantage and make a gain from his own fraud. When the plaintiffs rightfully offered to rescind the contract, thereafter they held the notes without contract as the property of the defendant, and he held the money received for the notes as money belonging to the plaintiffs, which they might recover in an action of general assumpsit.

The result is, we find no error in the judgment of the County Court, and the same is affirmed.