UNADILLA SILO COMPANY *v.* M. A. HULL & SON.

May Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed February 7, 1916.

*Sales—Warranty—Contract—Construction—Performance—Delivery and "Acceptance"—Time of Delivery—Burden of Proof—"On Arrival"—Time and Place for Inspection—Jury Questions—Duty of Buyer on Rejection—Rights of Buyers on Breach of Warranty—Fraud of Seller—Rights of Buyer—Presumption—Rescission of Contract—Return of Property—Action for Price—Proof—Conformity to Pleadings—Harmless Error—Evidence—Time for Inspection—Time of Notice—Circumstances Considered.*

Where a written contract for the sale of a silo specified the kind of wood of which it was to be built, it was for the court to construe the writing and to decide whether it contains a warranty, and

such a contract amounts to a warranty that the silo should correspond to the description.

Where a seller ships a silo made to a material extent of balsam in fulfilment of a contract whereby he warranted the silo to be of "Canadian spruce," he has not complied with his undertaking, and, unless the buyer accepts the silo shipped, he cannot be held for its price.

The delivery by the seller of an article corresponding with the description recited in the contract is a condition precedent to the vesting of title in the buyer, and so where the buyer of an article warranted as specified agrees to accept it on arrival at a designated place, and the seller asserts that the buyer has so accepted, the seller has the burden of proving such acceptance.

"On arrival," in a stipulation in a contract of sale that the buyer shall accept the property on arrival, means "following upon," and so the provision does no more than to fix the place of acceptance as that of the destination of the shipment as distinguished from that of its origin, but does not fix any particular time nor any particular place, after arrival, for the exercise of that right of inspection to which the buyer of specific goods of a designated description is always entitled before acceptance, unless he has waived it.

The mere opinion that the property was all right, expressed by a buyer entitled to inspection before acceptance, but before an opportunity for inspection had been afforded and while the property was being unloaded from the car by the seller's agents, indicated neither that the right of inspection had been exercised nor that it had been waived, for in the exercise of that right the buyer is entitled to a reasonable time and a fair opportunity.

The time and opportunity to which a buyer is entitled for the purpose of inspection are determined by what is reasonable in the circumstances of the particular case, and, where that depends on a combination of facts and circumstances, it is a question of fact, or a question of mixed law and fact, for the jury.

Where a seller sends the buyers property of a kind that they never purchased or agreed to take, who after learning that fact by inspection within a reasonable time reject the property and immediately notify the seller of their action and of the reason therefor, they are not required to go further and put the seller in *statu quo* by returning the property, but the burden is on the seller to remove it.

Where the time within which the buyer shall exercise his right of inspection before acceptance is not fixed by the contract, the law implies that it shall be within a reasonable time, and, within the time allowed for such inspection by the contract or by implication of law, the buyer has the right of rejection if the goods be found not to comply with the contract.

Where the seller delivered to the buyer an article of a material different in kind from that purchased and warranted, and the buyer waived his right of inspection by failure seasonably to exercise it, in an action for the price the buyer may rely on his warranty either as a full defence, if the steps essential thereto are taken, or in reduction of damages by way of recoupment.

The manufacturer of a silo is presumed to know of what kind of wood it is built, and if he delivers a silo to a material extent built of balsam for one sold and warranted to be of Canadian spruce, he defrauds the buyer, who upon its discovery is entitled to rescind the contract and return the silo.

Where the buyer of a silo warranted to be of Canadian spruce, upon discovering the seller's fraud in delivering one to a material extent built of balsam, notifies the seller of the buyer's refusal to accept for that reason, but does not offer to return the silo, he cannot claim a rescission of the contract on the ground of fraud.

In an action of general assumpsit, where plaintiff by its specifications seeks to recover only for the price of one "Canadian spruce silo," and the evidence showed that more than half the lumber of which the silo in question was built was spruce, but whether Canadian spruce did not appear, the variance between the specifications and the evidence would not preclude recovery.

Where a buyer of property refuses to accept the article delivered as not being in accordance with the contract, the seller is not entitled to tender a second delivery in fulfilment of the contract after the expiration of the time expressly or impliedly limited in the contract for such delivery, and the admission of evidence of such a tender in an action for the price of the article was error.

In assumpsit for the price of a silo that plaintiff had delivered to defendants and claimed that they had accepted, but which defendants' evidence tended to show they had refused to accept because it was to a material extent built of balsam, while the silo purchased was warranted to be of Canadian spruce, it was not error to refuse defendants' requested instruction that the fact that they were not lumber experts and could not readily distinguish between spruce

and balsam lumber should be considered on the question whether defendants acted seasonably in inspecting the silo and giving plaintiff notice of their rejection thereof.

GENERAL ASSUMPSIT for the price of a silo. Plea, the general issue. Trial by jury at the March Term, 1914, Franklin County, *Stanton,* J., presiding. Verdict and judgment for the plaintiff. The defendants excepted.

By the terms of the contract, the silo was to be built of "Canadian Spruce" wood, and to be shipped at once to Enosburg Falls, Vermont, to be paid for upon its arrival there, either in cash or by note as specified in the contract. The price was "F. O. B. cars, factory, Unadilla, N. Y." The defendants agreed to accept the silo on arrival, and to pay freight on same from Unadilla. This contract was signed by the defendants, and by F. N. Hammond, the plaintiff's salesman.

The evidence tended to show that on May 8, 1913, defendants received notice that the silo was at the station at Enosburg Falls (which was four miles from their farm), and requesting them to come for it in the afternoon of the 9th; that soon after dinner on the latter day, defendant F. W. Hull and one John Johnson, a hired man, went with two teams to unload the silo from the car and draw it home, but the silo was in the bottom of the car and underneath other silos, where it could not be taken out until late in the afternoon, and after Johnson was obliged to return home to do the chores; that after he thus went back, F. N. Hammond, the plaintiff's agent who sold the silo, and S. K. Burt who was in Hammond's employ, unloaded part of the silo in question from the car and placed it on the wagon of F. W. Hull who drew it home; that it was about seven o'clock in the evening when it was taken from the car, and some after eight o'clock when Hull got home with the load; that later in the evening the wagon was unloaded in defendants' barn; that the next day (it being Saturday) F. W. Hull went with the same team to Enosburg Falls and got the rest of the silo, it being taken from the car and loaded on to his wagon by Hammond and Burt, the same as the other load; that one of defendants' horses of the team used for this purpose was a stallion, by reason of which Hull was obliged to look after and hold the team while the wagon was being loaded each time, though of the first load he handled a very few staves; that the second load was taken from

the wagon in defendants' barn the next day, Sunday, and in so doing defendants' hired man Johnson discovered that the wood of some of the staves of the silo was balsam, and called defendants' attention thereto; that the next morning (Monday) defendants notified the plaintiff by letter that the silo contained balsam staves, it was not what they bought, and they refused to accept it; that plaintiff received this letter, and on May 15, 1913, wrote a letter to defendants stating "we are referring same to our Mr. Hammond who will call on you at his earliest convenience. We trust that he will be able to adjust the matter satisfactory to all concerned"; that Hammond never called on the defendants, nor did any representative of the plaintiff until late in the summer when a Mr. Beebe, an agent of the plaintiff, called and upon examination found some staves which he said were balsam. Against defendants' exception on the ground of immateriality, plaintiff was permitted to show by Beebe that on the occasion last referred to he "offered to replace any parts of the silo that were not satisfactory."

Defendants' evidence further tended to show that they had not sufficient knowledge of different kinds of wood to enable them to distinguish between balsam staves and spruce staves; that they had no opportunity to inspect the silo in question while it was at the railway station in Enosburg Falls, and no inspection of it was there made; that upon an examination being made by experts in handling lumber, after the silo was unloaded in defendants' barn, it was found that of the 232 staves in the silo 98 were balsam, also two pieces of the door frame. The plaintiff's evidence tended to show that there were found by its agent Beebe, about twenty balsam staves, but there was no evidence introduced by plaintiff that this was all the balsam staves there were, nor was there any evidence that some part of the door frame was not balsam.

At the close of the evidence, defendants moved for a directed verdict on several grounds which may be stated in substance as follows: (1) that the evidence fails to show any cause of action; (2) that the silo called for by the contract, constructed of "Canadian spruce," never was delivered by plaintiff to defendants; (3) that the silo delivered by plaintiff was never accepted by the defendants; (4) that plaintiff, by its specifications, seeks to recover "only for the price of one Canadian spruce silo," and the evidence does not show that such a silo was ever

delivered by it to defendants. The motion was overruled, and exception saved.

Defendants rely upon their exception to the court's refusal to charge in accordance with their sixth and eleventh requests to charge, which requests are sufficiently stated in the opinion.

Defendants' sixth requested instruction was as follows: "That the fact that the defendants were not lumber experts and could not readily discover or distinguish the difference between balsam and spruce lumber should be taken into account on the question as to whether the defendants acted within a reasonable time in making the inspection and giving the notice of their non-acceptance of the silo."

*McFeeters & McFeeters* for the defendants.

*W. B. Locklin* for the plaintiff.

WATSON, J. The written contract of sale, the material parts of which are given or set forth in the statement of the case, was executory. By it the plaintiff agreed to ship from its factory in Unadilla, New York, to the defendants, at Enosburg Falls, this State, a silo built according to the specifications contained in the contract, for which, upon its arrival at the latter place, defendants agreed to pay the sum named, either by cash or note as stated in the contract. The price was "F. O. B. cars, factory," at the place of shipment. Among other things, the contract expressly specified that the silo, except the roof, should be built of "Canadian spruce." There was no evidence in the case that defendants, or either of them, at the time of entering into the contract, had any personal knowledge as to the kind of wood of which the silo bargained for in fact was, or would be, made. The contract being in writing, it is for the court, in construing it, to decide whether it contains a warranty. *Hobart* v. *Young*, 63 Vt. 363, 21 Atl. 612, 12 L. R. A. 693. The words describing the kind of wood, entered into the contract as a part of it, and we think were intended to constitute, and did constitute, a warranty by the seller that the silo sold corresponds to the description. *Drew* v. *Edmunds*, 60 Vt. 408, 15 Atl. 100, 6 Am. St. Rep. 122; *Hobart* v. *Young*, cited above.

The silo shipped by the plaintiff, instead of being of "Canadian spruce," was to a material degree of balsam. This was a

difference in kind from that described in the contract, and its delivery was not a compliance with the plaintiff's undertaking. In this respect the case is much like that of *Shepard* v. *Kain,* 5 B. & Ald. 240, where the advertisement of the sale of a ship described her as a "copper-fastened vessel." It was held to be a warranty that she was copper-fastened, and that as the vessel was only partially copper-fastened, it did not, in trade, answer the description.

The delivery of an article corresponding with the description was a condition precedent to the vesting of the title in the defendants. *Reed* v. *Randall,* 29 N. Y. 358, 86 Am. Dec. 305; *Pierson* v. *Crooks,* 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831. It follows that the defendants were under no obligation to accept the silo, and unless they did accept it, they can not be answerable in this action. The plaintiff asserts, however, that defendants accepted it at Enosburg Falls, on its arrival there, by reason of which they are liable for the specified price. Relying upon such acceptance, the burden rests with the plaintiff to prove it. *Brewer* v. *Housatonic Ry. Co.,* 104 Mass. 593. The plaintiff contends that by defendants' agreeing, as part of the contract, "to accept this silo on arrival," the place of acceptance was fixed by the parties as Enosburg Falls. Webster's New International Dictionary defines the word *on,* when used in this sense, as "Upon the occasion of; following upon." In this respect, the contract does no more than to fix the place of acceptance as that of the destination of the article shipped, as distinguished from the place of shipment. It does not undertake to say at what time, nor at what particular place, after arrival the right of inspection shall be exercised. The rules of the common law must govern. It is laid down by Professor Williston, that in the law of sales the proper meaning of the word "acceptance" is an assent to become the owner of the specific goods offered by the seller; but that the word does not necessarily contain any implication that acceptance of the goods means not only assent to become the owner of them, but also an agreement that they fulfill in every respect the legal obligations of the seller. And that where the bargain relates to specific goods by description, where there is no opportunity of inspection, though the property may pass by the terms of the bargain, the acceptance of the goods is subject to a condition subsequent until the buyer has an opportunity for inspection, unless by the

terms of the bargain the right of inspection has been waived, that the goods conform to the description. Williston on Sales, Sec. 482-483. And "in offering delivery the vendor is bound to give the buyer an opportunity of examining the goods, so that the latter may satisfy himself whether they are in accordance with the contract." 2 Benj. Sales, Corbin's Ed. Sec. 1042.

It is said that defendant F. W. Hull expressed an opinion that the silo was all right when it was being unloaded from the car. Yet this being but an opinion expressed before an opportunity for inspection had been afforded, it indicated neither that the right of inspection had been exercised nor that it had been waived. The silo could not be inspected in the car, it being at the bottom of the car and under other silos, and after it was taken from the car and loaded on to defendants' wagon by plaintiff's agents, defendants were by law entitled to a reasonable time and a fair opportunity of inspecting it as a whole, to see if it corresponded with the contract, before determining to accept or reject it. *Holmes* v. *Gregg,* 66 N. H. 621, 28 Atl. 17; *Pierson* v. *Crooks,* cited above; *McNeal* v. *Braum,* 53 N. J. L. 617, 23 Atl. 687, 26 Am. St. Rep. 441. In the Holmes case, the plaintiffs, lumber dealers in Chicago, received orders from the defendants in Nashua, N. H., for five lots of lumber. The lumber sent by plaintiffs came to defendants' yard in box cars in which it could not be examined. When unloaded and examined by defendants three out of the five lots were accepted and used by them, and the other lots, not conforming to the order, were rejected and piled in their yard, where they remained subject to the plaintiffs' order. Defendants seasonably informed the plaintiffs of their action, and tendered the price of the accepted lots. It was held that the defendants had a right to remove the lumber from the cars, and inspect and measure it, before determining to accept or reject it. In the McNeal case, McNeal, the defendant below, who was engaged in the foundry business at Burlington, N. J., ordered from Braum, the plaintiff below, who was a wholesale dealer in coal at Philadelphia, a barge load of coal, to be delivered at the former place. After the arrival of the barge, the defendant directed that it be placed alongside his wharf for unloading. It was so placed and made fast to the wharf. Defendant's servants completed their preparations for unloading the coal, about ten minutes before six o'clock, and stopped work at the usual time

for quitting work, having unloaded a small quantity of coal. During the night the barge sank. It was held that the loss fell upon the seller, the court saying that the aforementioned acts of the defendant's servants were no evidence of an acceptance of the entire barge; that under the rules of law, the defendant was entitled to a reasonable opportunity to unload the entire cargo for examination to ascertain whether the coal corresponded with the order, and had arrived in good condition.

Each, the time and the opportunity to which a buyer is entitled for the purpose of inspection, is measured by what is reasonable in the circumstances of the particular case; and where it depends upon a combination of facts and circumstances, as in the present case, it is a question of fact, or a mixed question of law and fact, to be determined by the jury. *Whitcomb* v. *Denio,* 52 Vt. 382; *Norton* v. *Gleason,* 61 Vt. 474, 18 Atl. 45; *Brainard* v. *Van Dyke,* 71 Vt. 359, 45 Atl. 758; *Ward* v. *Marvin,* 78 Vt. 141, 62 Atl. 46; *Goodyear Metallic Rubber Co.* v. *Baker's Estate,* 81 Vt. 39, 69 Atl. 160, 17 L. R. A. (N. S.) 667, 15 Ann. Cas. 1207. In addition, as bearing thereon in this case, should be noticed the fact that in its letter answering the notice from defendants that they had found balsam staves, and refusing to accept the silo because not according to the contract, the plaintiff made no claim that defendants had lost their right of rejection by failing to make examination earlier, or at any other place, nor did it make any claim that balsam was properly used, nor that it was used without the plaintiff's knowledge.

The plaintiff contends that even though the defendants did not have an opportunity to inspect the silo at the railroad station, the place of delivery, they can not refuse to make payment, for the reason that on rejecting the property, they did not return or offer to return it to that place, as was necessary in order to put the plaintiff in *statu quo.* Yet here property was sent to defendants of a kind which they never purchased or agreed to take, and on inspection they rejected it as not in conformity to the contract, immediately notifying the plaintiff of their action, and stating the reason therefor. Thereafter defendants abstained from exercising any dominion over the property, leaving it in their barn where the inspection was had, and where it has since remained. They were not by law required to return it. The plaintiff had undertaken to thrust upon the defendants, without their assent, a kind of goods not bargained

for by them, and if this was ascertained on seasonable examination, they had a right to reject the goods then and there, and the burden was upon the plaintiff to remove them. In *Gibson* v. *Vail*, 53 Vt. 476, the property was sold and delivered under a contract giving the buyer thirty days trial. Such trial being had, the goods did not prove to be satisfactory. It was held that the duty was then cast upon the buyer to notify the seller, within a reasonable time, of the failure of the trial, that he might retake his property, unless the facts reported excused the buyer from giving such notice. The trial there stipulated for was a practical test, such as is sometimes considered necessary to a fair inspection, (see Williston on Sales, Sec. 475; *Lucy* v. *Mouflet*, 5 H. & N. 229; *Cream City Gas Co.* v. *Friedlander*, 84 Wis. 53, 54 N. W. 28, 21 L. R. A. 135, 36 Am. St. Rep. 895), and the time allowed therefor was fixed by the contract. Here the time when the inspection should be made not being so fixed, the law implied that it should be within a reasonable time. Within the time allowed in either case, the buyer had the right of rejection if the goods be found not to comply with the contract. We think the holding in the Gibson case in the respect named, is authority for our holding above on the similar question in the case at bar. And so is the common law. Williston on Sales, Sec. 497; *Lucy* v. *Mouflet*, cited above; *Grimoldby* v. *Wells*, L. R. 10 C. P. 391; *Spaulding* v. *Hanscom*, 67 N. H. 401, 32 Atl. 154; *Rheinstrom* v. *Steiner*, 69 Ohio St. 452, 69 N. E. 749, 100 Am. St. Rep. 699; *Alden* v. *Hart*, 161 Mass. 576, 37 N. E. 742; *Doane* v. *Dunham*, 65 Ill. 512; *Diversy* v. *Kellogg*, 44 Ill. 114, 92 Am. Dec. 154; *Barton* v. *Kane*, 17 Wis. 38, 84 Am. Dec. 728.

The case of *Boughton* v. *Standish*, 48 Vt. 594, is not an authority to the contrary. There the defendant, residing in Randolph, this State, ordered one bale of buffalo robes of the plaintiff, residing in New York, specifying robes of good size and dark color, lined, and worth, part of them sixteen dollars each, and none less than twelve dollars. In shipping the goods upon the order, the seller wrote a letter to the buyer, telling him that in case any of the robes did not suit him, he was at liberty to return them free of expense, as per circular; but if he returned any, to "do so at once soon as received." Six of the robes did not answer the description in the order, in size or in color, and the hair was off in places,—being matters ascer-

tainable by an inspection of the goods. After keeping the robes sixteen days, the buyer returned these six, paying charges thereon, but the seller refused to receive them. The suit was to collect the purchase price. In disposing of the case, the general expression is used, that "when goods of a specific description are ordered, and the goods when received do not answer the description, if the party giving the order would avail himself of the right to return the goods, he should do so as soon as he has time and opportunity to ascertain the fact." Yet in *Cohens* v. *Virginia,* 6 Wheat. 264, 5 L. ed. 257, Chief Justice Marshall said, "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." It was held in the Boughton case that the buyer, by keeping the robes so long, and by the acts of dominion he exercised over them, waived his right to return them; that the time within which the goods might be returned was defined and made certain by the seller's letter sent with the bill of goods as "at once, soon as received"; and that thereby the time within which the buyer could return any portion of the goods, was limited and controlled. The circumstances of that case were peculiar. Construing the language of the court in the opinion, as it should be, with reference to the question actually under consideration, and not beyond that for any purpose of authority in another and different case, (*Wright* v. *Nagle,* 101 U. S. 791, 25 L. ed. 921,) the holding is not in conflict with the law hereinbefore laid down.

Upon the ground assigned in the motion for a directed verdict, that the evidence fails to show any cause of action, we must consider the case with reference to the warranty declared above, and the defendants' rights thereunder; for, assuming that they waived their right of inspection by failure to exercise it within the time allowed by law, they may yet stand upon the warranty, either as a full defence if the steps essential thereto were taken, or in reduction of damages by way of recoupment.

It fairly appears from the record that the plaintiff is a manufacturer of silos, and that the one sold to the defendants was of their products. This being so, the plaintiff is presumed to have had knowledge of the kind of wood of which it was built, namely,

instead of being "Canadian spruce," in conformity with the description in the contract of sale, it was in fact partially balsam. In bargaining and delivering such a silo as and for one of the kind described in the contract, the plaintiff committed actual fraud upon the defendants, and the latter were entitled, upon its discovery, to rescind the contract and return the property received. The question is, Did they take the necessary steps to that end? It appears from the evidence that defendants discovered the fraud on Sunday, May 11, when unloading, in their barn, the last load of the silo drawn from the railroad station, and that on the next morning (the earliest opportunity on a week-day) they sent the letter to the plaintiff notifying it of what they had discovered, and in effect that the silo was not according to the contract, and refusing to accept it. This was shown by parol evidence,—neither the letter nor a copy of it was presented. Whether the letter, if produced, would show any offer to return the property, or anything of that nature, we have no means of knowing. The parol evidence failed to go to that extent, which was essential in rescinding the contract on discovery of the fraud, because the property did not answer the warranty. *Hoadley* v. *House*, 32 Vt. 179, 76 Am. Dec. 167; *Gates* v. *Bliss*, 43 Vt. 299; *Tilton Safe Co.* v. *Tisdale*, 48 Vt. 83; *Whitcomb* v. *Denio*, 52 Vt. 382; *Ward* v. *Marvin*, 78 Vt. 141, 62 Atl. 46.

Another ground assigned why a verdict should be directed was, that the plaintiff, by its specifications, seeks to recover only for the price of one "Canadian spruce silo," and there was no evidence that such a silo had been delivered to defendants. According to all the evidence, more than half of the wood of which the silo delivered was in fact built, was spruce. Whether it was "Canadian" spruce, did not appear one way or the other. We do not think the variance between the specifications as such and the evidence was such as to prevent a recovery in this action. See *Fitzsimons* v. *Richardson, Twigg & Co.*, 86 Vt. 229, 84 Atl. 811.

The foregoing sufficiently covers the substance of the grounds upon which the motion for a directed verdict was based. The motion was properly overruled.

Subject to exception on the ground of immateriality, the plaintiff was permitted to show that late in the summer of 1913, it offered to replace any parts of the silo which were not satis-

factory.    This was error.    Whatever may be said as to the right of a seller to tender a second delivery within the time limited by the contract, although the first tender has been properly rejected by the buyer as being not in accordance with the contract, (see Benj. Sales, Corbin's Ed. Sec. 1045; *Borrowman* v. *Free,* 4 Q. B. D. 500, C. A.) the right does not extend in time beyond such limitation; hence the evidence was wrongly received.    See *Emack* v. *Hughes,* 74 Vt. 382, 52 Atl. 1061.    It is said however that if the reception of the evidence was error, the defendants were not harmed.    But in view of the questions asked by the jury concerning the fact shown, it is very apparent that the evidence was harmful.

It was not error to refuse defendants' sixth request to charge.    There can be no doubt that the fact that defendants could not readily distinguish between spruce lumber and balsam lumber was a circumstance to be taken into account upon the question whether they acted within a reasonable time in making the inspection and giving notice of their rejection of the silo, (*Morse* v. *Moore,* 83 Me. 473, 22 Atl. 362, 13 L. R. A. 224, 23 Am. St. Rep. 783; Williston on Sales, Sec. 488,) but they might have been able readily to make the distinction even though not experts in lumber.    The importance of the circumstance was in their inability to distinguish between the two kinds of lumber, not in their being non-experts.

What we have already said sufficiently disposes of the exception to the noncompliance with the eleventh request to charge, and the exception to the refusal of the court to set aside the verdict.

*Judgment reversed, and cause remanded.*